BUCHALTER LLP
SAMUEL D. SAZER (SBN: 313037)
425 Market Street, Suite 2900
San Francisco, CA 94105
Telephone: 415.227.0900
Fax: 415.227.0770
Email: ssazer@buchalter.com

Attorneys for Defendant
EDFINANCIAL SERVICES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

AMELIA STRAIGHT, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

EDFINANCIAL SERVICES, LLC,

Defendant.

Case No. 3:26-cv-01807-JSC
*Assigned for All Purposes to:*
Hon. Jacqueline Scott Corley; Ctrm. 8

**DEFENDANT EDFINANCIAL SERVICES, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: July 9, 2026
Time: 10:00 a.m.
Ctrm: 8
Judge: Hon. Jacqueline Scott Corley

///

///

///

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on July 9, 2026, at 10:00 a.m., or as soon as the matter may be heard before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave, San Francisco, CA 94102, Defendant Edfinancial, LLC ("Defendant") will and hereby does move this Court for an order dismissing the class action Complaint filed by Plaintiff Amelia Straight ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion").

The Motion is brought on the grounds that the Complaint (1) fails to allege a concrete "injury in fact" sufficient to support the exercise of this Court's jurisdiction pursuant to Article III of the U.S. Constitution and (2) fails to state claims for violation of the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), or Article I, § 1 of the California Constitution as a matter of law. Accordingly, the Complaint should be dismissed with prejudice in its entirety.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other matters that the Court may consider, and any oral argument of counsel.

DATED: April 24, 2026

BUCHALTER LLP

By: */s/ Samuel D. Sazer*
SAMUEL D. SAZER
Attorneys for Defendant
EDFINANCIAL SERVICES, LLC

## TABLE OF CONTENTS


I. STATEMENT OF ISSUES TO BE DECIDED ........ 7

II. FACTUAL BACKGROUND ........ 7

III. ARGUMENT AND CITATION TO AUTHORITY ........ 9

A. Motion to Dismiss Standards ........ 9

1. Rule 12(b)(1) ........ 9

2. Rule 12(b)(6) ........ 10

B. Plaintiff lacks Article III Standing because she fails to plead an injury-in-fact ... 10

C. Plaintiff's ECPA claim fails because the party exception applies and the crime-tort exception does not apply ........ 13

D. Plaintiff fails to state a claim under CIPA § 631 ........ 15

1. Edfinancial cannot be held liable under § 631 for eavesdropping on its own conversation ........ 15

2. Edfinancial did not "aid and abet" Google in a CIPA violation because Plaintiff has not plausibly alleged Google violated CIPA ........ 16

3. Plaintiff has not plausibly alleged that Edfinancial "read or learned" the "contents or meaning" of her communications while they were in "transit" ........ 18

E. Plaintiff fails to state a claim under CIPA § 632 for the same reasons she cannot state a claim under CIPA § 631 ........ 19

F. Plaintiff cannot plausibly state a claim for invasion of privacy under the California Constitution because she cannot meet the "high bar" required for such a claim ........ 20

IV. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 14, 20

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 21

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 15, 19

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 13

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 12, 16, 18

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986, 125 Cal. Rptr. 3d 260 (2011) .......... 20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 16

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 14

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 20

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 15, 18

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994) .......... 20

*Karwowski v. Gen Digital, Inc.*,
2025 WL 3002610 (9th Cir. Oct. 27, 2025) .......... 14

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .................................................. 14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................. 21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).................................................................................. 9

*Magliocca v. United Healthcare Services, Inc.*,
2026 WL 878694 (E.D. Cal. Mar. 31, 2026)...................................9, 10, 11, 12

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ................................................ 13

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021).................................................... 18

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)...................................................... 10

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)........................................ 11, 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)..........................................................9, 10, 11, 12

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ............................................ 17

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025).............................................. 11

*Smith v. YETI Coolers*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ................................................ 19, 20

*Swarts v. HomeDepot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................ 16, 17

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025)............................................... 15

*Torres v. Prudential Financial*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)............................................ 18

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .................................................. 19

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .................................................... 17

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 18

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 9, 10, 12, 13

*Xu v. Reuters News & Media Inc.*,
No. 24 CIV. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 13

*In re Yahoo Mail Litigation*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 20, 21

*Yockey v. Salesforce*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 16

*Zocco v. Nelnet*,
No. 25-CV-04470-NW, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) .......... *passim*

**Statutes**

18 U.S.C. § 2511 .......... 9

18 U.S.C. § 2511(1)(a)–(e) .......... 13

18 U.S.C. § 2511(2)(d) .......... 13

Cal. Penal Code § 631 .......... 15, 16, 18, 19

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 632(a) .......... 19

Cal. Penal Code § 632(c) .......... 19

**Other Authorities**

California Constitution .......... 20, 21

California Constitution Article I, § 1 .......... 7, 9

Fed. R. Civ. P. 12(b)(1) .......... 7, 9

Fed. R. Civ. P. 12(b)(6) .......... 7, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff brings this lawsuit challenging Edfinancial Services, LLC's ("Edfinancial" or "Defendant") use of Google Analytics, a ubiquitous website tool that Plaintiff herself acknowledges "is one of the most popular web analytics platforms." Yet Plaintiff alleges no concrete injury. She does not claim her personal information was disclosed publicly or to any unauthorized third party. Rather, she speculates that anonymized data was sent to Google, which "could" theoretically use such information for other purposes. Plaintiff's Complaint ultimately reduces to the untenable proposition that a cause of action accrues for every Edfinancial borrower who simply logs into the website. Because Plaintiff has not pled any concrete, cognizable injury, she lacks Article III standing to bring this lawsuit.

Additionally, even if Plaintiff could establish standing, her claims should be dismissed for failure to state a claim. This Court recently dismissed nearly identical ECPA and CIPA claims in *Zocco v. Nelnet*,[1] finding the plaintiff failed to state a claim against another federal student loan servicer. Plaintiff fares no better here. Accordingly, the Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff's claims for violation of the ECPA, CIPA, and Article I, § 1 of the California Constitution should be dismissed with prejudice pursuant to Rule 12(b)(1).
2. Whether, in the alternative, Plaintiff's claims for violation of the ECPA, CIPA, and Article I, § 1 of the California Constitution should be dismissed with prejudice pursuant to Rule 12(b)(6).

## II. FACTUAL BACKGROUND

Edfinancial is a servicer of federal student loans pursuant to a contract with the Department of Education ("DOE"). The Complaint relates to a website with the ".gov" extension, edfinancial.studentaid.gov ("Website"), allegedly maintained by Edfinancial, which allows student loan borrowers to manage their accounts online. (Complaint ¶¶ 1–2, 6, 35.)

Plaintiff, a California resident, created an online account on the Website using her Gmail

[1] No. 25-CV-04470-NW, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026).

account; she "pays while logged into her [Google] account." (*Id.* ¶ 6.) In creating her Google account, Plaintiff voluntarily provided to Google her "name and phone number." (*Id.*) In turn, Google advised Plaintiff that many websites use Google Analytics, and if she does not want Google Analytics to be used in her browser, she can opt out.[2] The Complaint does not describe how the settings on Plaintiff's Google account or browser were configured. As Plaintiff alleges in her Complaint, Google Analytics is ubiquitous and "one of the most popular web analytics platforms" on the internet. (*Id.* ¶ 48.)

The bulk of Plaintiff's Complaint describes the technical mechanisms of Google Analytics. (*Id.* ¶¶ 36-66, 73-77.) Despite this technical detail, the Complaint contains remarkably few facts regarding Plaintiff's actual experience with the Website. Although the Complaint is replete with hypotheticals about what a borrower might do once logged into an Edfinancial account (*id.* ¶¶ 72-73), Plaintiff claims only to have "accessed her account monthly to make payments." (*Id.* ¶ 6.) She does not allege that she sought or obtained a deferment or forbearance through the Website. Critically, the Complaint is devoid of any allegations that Plaintiff suffered actual harm from Edfinancial's use of Google Analytics, such as targeted advertisements, public disclosure, identity theft, or misuse of any kind.

The Complaint reveals that only limited, anonymized information was shared via Google Analytics about borrowers' interactions with the Website: a "Client ID" (an anonymous string of numbers Google assigns to a particular device and browser combination—for example, Figures 1-4 reference CID "1219078820.1771792665"), browser and device characteristics, language settings, screen resolution, operating system information, and the URL or title of the webpage visited. (*Id.* ¶¶ 56-59 & Figs. 1–2.) The screenshots in Figures 1-2 of the Complaint, which supposedly represent what Edfinancial discloses to Google when a borrower makes payments or allocates overpayments, do not show the user's name, account number, payment amount, loan balance, or any other substantive financial information.

Plaintiff asserts claims on behalf of herself and a putative class for: (1) violations of the

---

[2] *See Privacy & Terms*, GOOGLE, https://policies.google.com/technologies/partner-sites?hl=en-US (last accessed April 20, 2026).

ECPA, 18 U.S.C. § 2511; (2) violations of CIPA § 631(a); (3) violations of CIPA § 632; and (4) invasion of privacy under Article I, § 1 of the California Constitution. All of these claims should be dismissed.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Motion to Dismiss Standards

#### 1. Rule 12(b)(1)

To establish standing (and thus survive a motion to dismiss under Rule 12(b)(1) for lack of standing), a plaintiff must have suffered an "injury in fact" that is "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id*. Finally, it must be "likely" that the "injury will be redressed by a favorable decision." *Id*. at 561.

A plaintiff cannot establish standing based merely on the disclosure of anonymous information about her actions on the Internet, as "there existed no free-roaming privacy right at common law." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025). Rather, a plaintiff must establish a connection between the harm alleged and one of the four privacy-related torts recognized at common law—i.e., "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Id*. Plaintiff must establish an actual injury and cannot do so only by pointing to the alleged capability of third-party trackers to de-anonymize their data for advertising purposes. *See Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (disclosure "of one's email address and IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law"). Plaintiff also cannot rely on her statutory claims, standing alone, to confer Article III standing. *See Wooten*, 807 F. Supp. 3d at 1143–44 (holding that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."); *see also Magliocca v. United Healthcare Services, Inc.*, 2026 WL 878694, at *3 (E.D. Cal. Mar. 31,

2026) (holding that "an injury in fact must be concrete and particularized," even where a plaintiff sues under a statute providing a cause of action and statutory damages).

**2. Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555.

**B. Plaintiff lacks Article III Standing because she fails to plead an injury-in-fact**

Plaintiff's conclusory allegations about information Google could theoretically collect are insufficient to establish the concrete and particularized injury required for Article III standing. As the Ninth Circuit recognized in *Popa*, tracking interactions with a website does not cause harm "remotely similar" to the "highly offensive" interferences or disclosures actionable at common law. 153 F.4th at 791. Such tracking is "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.*; *see also Wooten*, 807 F. Supp. 3d at 1144 ("collection and dissemination of plaintiffs' IP and email addresses" are insufficient to constitute a privacy injury); *Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) ("Courts have been unwilling to find a cognizable privacy interest in browsing data from users on Defendant's own website."); *Magliocca*, 2026 WL 878694, at *3 ("Where the collection of information is more reminiscent of 'a store clerk's observing shoppers,' no concrete privacy injury arises; this is often the case when the tracking software monitors IP addresses and other rudimentary browsing activity."). In *Magliocca*, the court held that when a health insurance company's website tracked "button clicks, page visits, scrolls, session

lengths, URLs, and IP addresses," this was exactly the kind of "non-sensitive browsing activity on a single website" that courts have repeatedly found insufficient to establish a concrete injury. *Id*. Like the plaintiffs in *Popa* and *Magliocca*, Plaintiff here fails to identify any "embarrassing, invasive, or otherwise private information" collected by Google.

Observing an anonymous user access certain pages on Edfinancial's portal is no different from observing unidentified shoppers in a store and noting which aisles they visit—the precise conduct permitted under *Popa*. Plaintiff attempts to manufacture a privacy injury by invoking PII and "nonpublic personal information" purportedly protected by the GLBA and CalFIPA. (Complaint ¶ 6.) But Plaintiff's own allegations confirm that nothing "personally identifiable" was disclosed to Google. The most concrete description of information allegedly disclosed to Google appears in Figures 1-2 of the Complaint. (*See* Complaint ¶¶ 56-59, 73.) These Figures do not identify Plaintiff individually or include sensitive financial information; they merely reflect the URL of the page visited and an anonymous CID number—a string of numbers Google assigns to a particular device and browser combination. (Complaint ¶¶ 73, & Figures 1-2.) At most, this metadata shows that an anonymous user accessed a particular page on the Website.

Nothing in this metadata qualifies as PII or nonpublic personal information protected by the GLBA or CalFIPA. And these statutes aside, courts have repeatedly held that disclosures of this nature are insufficient to demonstrate Article III injury. *See, e.g., Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (collection of "basic contact information" including IP addresses and browser and device data did not give rise to concrete injury); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) (no standing where collected data included plaintiff's IP address, geolocation data, and email address).

The same is true for "fingerprinting" data (e.g., device and browser information) Plaintiff alleges was disclosed. As the *Popa* court explained, fingerprinting details like the "device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website" and "clicks" do not implicate privacy interests. 153 F.4th at 786. Similarly, in *Hughes v. Vivint*, the plaintiff alleged harm to be "collection of otherwise anonymous information that is used by TikTok to identify Plaintiff through the 'fingerprinting'

process." 2024 WL 5179916, at *5 (N.D. Cal. July 12, 2024). The plaintiff did not allege injury sufficient to confer standing because she did not allege that the defendant's collection of her anonymous information from visiting the website could be associated with her and identify her. *Id*. Plaintiff's speculation that Google may be able to link a CID to a particular user is just that—speculation—and does not transform the information Edfinancial allegedly shared with Google Analytics into Plaintiff's "PII."

Compare these cases to *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). There, it was alleged that when a user created a Facebook account, Facebook placed more than ten cookies on the user's browser that tracked the user's browsing history even after the user logged out of Facebook and visited other websites. Facebook used such information in combination with the user's personal Facebook profiles, which could include employment history and political and religious affiliations, to gain a "cradle-to-grave" profile without the user's consent. *Id*. at 599-600. The court held that allegations of data collection performed "in order to receive and compile [the user's] personally identifiable browsing history...no matter how sensitive or personal" constituted a "clear invasion of the historically recognized right to privacy" sufficient to establish Article III standing. *Id*. at 598–99.

As the court in *Magliocca* recently recognized, allegations of collected information such as button clicks, page visits, scrolls, session lengths, URLs, and IP addresses (the same information Plaintiff alleges was collected here) bear "no resemblance" to the detailed, sensitive data at issue in *In re Facebook*. 2026 WL 878694, at *4; *see also Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (rejecting plaintiff's analogy to *Facebook* because plaintiff did not allege the defendant's website continuously collected data from multiple websites and only established collection of "'IP addresses,' undefined 'unique identifiers,' and 'browsing information'").

Plaintiff also fails to allege that Google actually misused her information in any way that caused cognizable harm. She does not allege, for example, that she received targeted advertisements resulting from Google's alleged "interception" of her data. The purely hypothetical risk of Google misusing data (assuming it could even be attributed to Plaintiff) cannot establish standing. *Wooten*,

807 F. Supp. 3d at 1145 (no standing where plaintiffs were not "subject to any…targeted advertising"); *Mitchener*, 2025 WL 2272413, at *4 (conclusory allegations about what information defendants "could" gain were insufficient to establish concrete harm to plaintiff); *Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (finding no standing when the plaintiff did not allege that he "received any targeted advertising or was otherwise affected, much less that [he] was concretely harmed by any such advertising."); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing CIPA and ECPA claims absent "allegations suggesting a risk of future harm to them is imminent or substantial"). In *Wooten*, the Eastern District of California found no standing even when a plaintiff alleged third-party trackers have the *capability* to use information to engage in ID bridging, which could result in targeted advertising, because the plaintiff did not allege that she was actually subject to any such targeting. 807 F. Supp. 3d at 1145. The same deficiency is true here.

### C. Plaintiff's ECPA claim fails because the party exception applies and the crime-tort exception does not apply

The ECPA prohibits the unauthorized "interception" of an "electronic communication." 18 U.S.C. § 2511(1)(a)–(e). Critically, the ECPA requires the consent of only one party to a communication. Under the "party exception," no ECPA violation occurs when the person intercepting a communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). This exception does not apply, however, when an interceptor acts "'for the purpose of' committing any crime or tort in violation of state or federal law." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023) (quoting 18 U.S.C. § 2511(2)(d)).

The party exception plainly applies here. Edfinancial is indisputably a party to Plaintiff's communications with Edfinancial's website, which Google allegedly intercepted. (Complaint ¶¶ 6, 69); *see Zocco v. Nelnet, Inc.*, No. 25-CV-04470-NW, 2026 WL 242037, at *4 (N.D. Cal. Jan. 29, 2026) (applying party exception in virtually identical circumstances where plaintiff acknowledged being a Nelnet account holder who signed into "account portals…[to] utilize various financial services (i.e., pay loans) through Nelnet" and the complaint was "replete with descriptions of

Plaintiff[s'] communications with Defendant and Plaintiff and Class members' interactions with Defendant's Website."); *Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) (finding plaintiffs failed to allege defendant was not a party when plaintiff knowingly used defendant's browser extension).

Plaintiff's attempt to invoke the crime-tort exception fails. To overcome the party exception, Plaintiff must allege that "either the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). Plaintiffs cannot simply assert "that Defendant's conduct was illegal or tortious." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). The focus must instead be on "whether the purpose for the interception—its intended use—was criminal or tortious," not whether the interception incidentally violated another law. *Id.* (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

Here, the Complaint alleges only that "Defendant intentionally intercepted the contents of Plaintiff[s'] and Class members' electronic communications for the purpose of committing a criminal or tortious act." (Complaint ¶ 107.) But this conclusory assertion is unsupported by specific facts. Plaintiff alleges that Edfinancial "violated a provision of the Gramm-Leach-Bliley Act" (*id.* ¶ 108) and the California Financial Information Privacy Act (*id.* ¶ 109), but fails to explain how Edfinancial allegedly violated these laws or that such violation was the purpose of the interception. Indeed, Plaintiff's own allegations undercut her theory: she acknowledges that "Defendant specifically used the tracking technology provided by Google to track and utilize Plaintiff's and Class members' PII for financial gain" (*id.* ¶ 109)—*i.e.*, a commercial purpose, not a tortious one. *See Lakes*, 777 F. Supp. 3d at 1058 (dismissing ECPA claim where complaint demonstrated purpose of interception was "to make money"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("the tort or crime exception cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money") (cleaned-up).

This Court's recent decision in *Zocco* is exactly on point. There, Judge Wise dismissed nearly identical ECPA and CIPA claims against another federal student loan servicer based on the

same theory Plaintiff alleges here—that installing Google Analytics on a Department of Education-directed website violated privacy rights. Judge Wise concluded that plaintiffs failed to "state how Nelnet allegedly violated [the GLBA and CalFIPA,] [or] that the violation [of these statutes] was the purpose for the interception." *Zocco*, 2026 WL 242037, at *5 (emphasis added). Plaintiff's Complaint suffers from the identical defect. Although it cites additional statutory language from CalFIPA and GLBA (Complaint ¶¶ 20-27), it does nothing to substantiate the same conclusory allegation that Judge Wise found inadequate in *Zocco*—that Edfinancial acted with "the purpose of committing a criminal or tortious act." (*Id.* ¶¶ 107-110); 2026 WL 242037, at *5. The Court should therefore dismiss Plaintiff's ECPA claim based on the party exception, as this Court did in *Zocco*.

**D. Plaintiff fails to state a claim under CIPA § 631**

Plaintiff's CIPA § 631 claim fails for multiple independent reasons. First, Edfinancial cannot "eavesdrop" on its own communications. Second, Plaintiff has not plausibly alleged that Google committed a predicate CIPA violation that Edfinancial could have "aided and abetted." Third, as a criminal statute, CIPA must be narrowly construed. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (applying rule of lenity to resolve ambiguity in CIPA's coverage because "interpretations courts adopt while adjudicating [civil] actions could affect the extent to which people or companies are subject to criminal liability").

**1. Edfinancial cannot be held liable under § 631 for eavesdropping on its own conversation**

The first three clauses of § 631(a) impose liability for three distinct and mutually independent patterns of conduct, including a first clause for intentionally tapping or making an unauthorized connection, a second clause for secretly intercepting communications, and a third clause for using information unlawfully obtained. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1120 & n.3 (C.D. Cal. 2024) (quoting *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978)). Based on the text of these three clauses, a party cannot be held liable for "eavesdropping" on its own conversation. *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) (citing *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Ct. App. 1975)).

As this Court and others have recognized, courts apply the same analysis for the party

exception under both the ECPA and CIPA. *Zocco*, 2026 WL 242037, at *6; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (stating that "[c]ourts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) (holding that CIPA claims were properly dismissed because the defendants were exempt from liability under the ECPA's party exception). Accordingly, Plaintiff's CIPA claims should be dismissed for the same reasons set forth in Section C above—namely, that Plaintiff does not plausibly allege Edfinancial acted with the primary purpose of committing a tort independent of the alleged interception.

**2. Edfinancial did not "aid and abet" Google in a CIPA violation because Plaintiff has not plausibly alleged Google violated CIPA**

Plaintiff fails to establish any predicate violation of the first three CIPA clauses by Google that Edfinancial could have "aided and abetted" (as she must to state a claim under the fourth clause of § 631(a)). Section 631 imposes liability "on anyone who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." *Swarts v. HomeDepot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631). To adequately plead a civil aiding-and-abetting cause of action under § 631, a party must plead "an underlying predicate violation" by the aided party from one or more of three distinct predicate violations. *B.K. Desert Care Network*, 2024 WL 1343305, at *7 (N.D. Cal. Feb. 1, 2024). These predicate violations are the first three clauses in §631(a), namely:

(1) when a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument,"

(2) when a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," or

(3) when a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."

*Yockey v. Salesforce*, 688 F. Supp. 3d 962, 970 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).

Plaintiff's conclusory allegation that Edfinancial "aided and abetted" Google fails because Plaintiff has not plausibly alleged that Google committed any predicate CIPA violation.

The first clause is not implicated here because Plaintiff does not allege Edfinancial tapped a "telegraph or telephone wire, line, cable, or instrument." *See Swarts*, 689 F. Supp. 3d at 743 (collecting cases); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (finding the first clause "does not apply to the internet").

To allege a predicate act under the second clause, a plaintiff must allege the eavesdropping occurred "while the [communication] is in transit." Cal. Penal Code § 631(a). "'While' is the key word here." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). This Court's decision in *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7–8 (N.D. Cal. Mar. 28, 2025) is instructive. In that case, plaintiffs alleged Google receives information as it is being transmitted, and views and stores the information "to generate reports and to help analyze the data collected." *Id.* at *7. However, the court held that the plaintiffs did not plausibly allege Google views or reads the information while it is in transit; instead, they alleged information is sent "to Google for processing" and later, "[o]nce Google Analytics receives, views, reads, and processes the data, it aggregates and organizes the data based on particular criteria." *Id*. The court found that "[t]hese allegations do not support a plausible inference Google reads the information 'while the same is in transit.'" *Id*.

Plaintiff's allegations are the same as those rejected by the Court in *R.C. v. Sussex Publishers*. Plaintiff alleges that Google violated the second CIPA clause by reading or attempting to learn the contents of her communications with Edfinancial while in transit. But Plaintiff has not plausibly alleged that any "contents" of her communications were "read" or "learned," let alone while "in transit." The anonymized metadata allegedly disclosed to Google reveals nothing about the substance of Plaintiff's interactions with Edfinancial's website.

Plaintiff's failure to plausibly allege a violation of the first two clauses defeats any allegations as to the third. *Sussex Publishers*, 2025 WL 948060, at *7–8; *see also Swarts*, 689 F. Supp. 3d at 744 (holding "[a] violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)."). Accordingly, Plaintiff has not

plausibly alleged that Google violated any of the first three clauses of § 631, and Edfinancial therefore cannot be held liable for aiding and abetting a nonexistent predicate violation.

**3. Plaintiff has not plausibly alleged that Edfinancial "read or learned" the "contents or meaning" of her communications while they were in "transit"**

CIPA requires Plaintiff to establish that Edfinancial intercepted the "contents or meaning" of a message, a requirement courts have interpreted as being co-extensive with the ECPA's "contents" requirements. *See In re Facebook*, 956 F.3d at 607; *Heiting*, 709 F. Supp. 3d at 1017 (noting that "CIPA borrows the definition of protected 'contents' from the federal Wiretap Act"). Plaintiff's CIPA claim thus fails because allegedly intercepted, anonymized metadata says nothing about the substance of her communications with Edfinancial's website.

Section 631(a) also requires plaintiffs to show that an eavesdropping occurred "while the [communication] is in transit." To establish liability, the interceptor must have "read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021). While Plaintiff formulaically asserts in Count II of the Complaint—and nowhere else—that Google "read, attempted to read, and/or learned the contents or meaning of electronic communications…while [they] were in transit" (Complaint ¶ 120), this allegation is contradicted by her remaining allegations.

Reading or learning the contents of a communication requires "some effort at understanding the substantive meaning" of the communication. *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024); *see also Torres v. Prudential Financial*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) (concluding "in transit" requirement was not met because third-party interceptor did not actually read or attempt to read the communications while they were in transit). Here, rather than establish that Google "read" or attempted to read the substance of Plaintiff's communications while they were in transit, the Complaint confirms that it is only after Google: (i) receives; (ii) packages; (iii) processes; and (iv) stores data on its database that it ultimately generates reports and analyzes the data. (Complaint ¶¶ 53-54.)

*Doe v. Eating Recovery Ctr. LLC* is instructive on this point. 806 F. Supp. at 1117. In that case, the plaintiffs asserted CIPA claims based on allegations that their sensitive interactions with an eating disorder treatment center's website were intercepted via the Meta Pixel tracker. *Id.* at 1113. The Court rejected the CIPA claims because it was undisputed that Facebook's "filtering operation"—alleged to be part of "reading" the messages' "contents"—took place after the "communication has already traveled from the website visitor to the website operator." *Id.* at 1117. Here, the Complaint alleges that Google can identify the user and analyze the person's interactions with the website only after the receipt of the same. (*See* Complaint ¶¶ 53-54, 71-73.) Plaintiff's own allegations therefore establish that Google did not "read" the allegedly intercepted data in real time, requiring dismissal of her § 631(a) claim.

**E. Plaintiff fails to state a claim under CIPA § 632 for the same reasons she cannot state a claim under CIPA § 631**

CIPA § 632(a) provides for liability against a "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). To state a claim under § 632, plaintiff must show there was: (1) an electronic eavesdropping or recording of (2) a confidential communication and (3) all parties did not consent. *Smith v. YETI Coolers*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). "Confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c). Plaintiff cannot sustain a claim under § 632 for the fundamental reason that a party cannot "eavesdrop" on its own conversations. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024) ("It is never a secret to one party to a conversation that the other party is listening to the conversation."). Additionally, any "aiding and abetting" claim under § 632 fails for the same reasons it fails under § 631(a), as stated in section **D.2.** above. *See Smith*, 754 F. Supp. 3d at 944 (dismissing § 632 claim for aiding and abetting "for the same reasons" as dismissal of the plaintiff's § 631 aiding and abetting claim).

### F. Plaintiff cannot plausibly state a claim for invasion of privacy under the California Constitution because she cannot meet the "high bar" required for such a claim

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *Smith*, 754 F. Supp. 3d at 944; *In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (citation omitted). Plaintiff must establish three elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 859, 865 P.2d 633 (1994). Under the third prong, "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id*. at 857, 655.

As to the third element, Plaintiff fails to plausibly allege facts from which the Court or trier of fact could find that Edfinancial's conduct is so egregious as to constitute a "serious invasion of privacy." Courts recognize that the offensiveness of the conduct typically cannot be resolved at the pleading stage, as this is a fact-specific inquiry. *See, e.g., In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157-58 (N.D. Cal. 2021). However, where the conduct amounts to "routine commercial behavior," the third element is not met. *See, e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 125 Cal. Rptr. 3d 260, 265 (2011).

Plaintiff's own allegations defeat her claim. Throughout the Complaint, she emphasizes the ubiquity of Google Analytics, acknowledging it has "become one of the most popular web analytics platforms." (Complaint ¶ 48.) Plaintiff cannot plausibly allege that Edfinancial's use of this industry-standard tool "egregiously deviated" from social norms. *Brown*, 685 F. Supp. 3d at 941 (noting Google Analytics "is on over 70 percent of all websites and collects users' data on every visit"). Plaintiff does not allege that the challenged tracking caused any interruption of her ability to make payments on her loans, any misuse of her identity, or any publication of her information. She alleges only that Google receives routine web-interaction signals, which it theoretically could use (but is not alleged to have actually used) for analytics and targeted advertising. (Complaint ¶¶ 57-66, 71-81, 104.) As pled, the asserted "intrusion" amounts to nothing more than the

background collection of anonymized web analytics data that internet users routinely encounter on modern websites.

In this respect, the Complaint alleges the same type of conduct that courts have repeatedly treated as non-egregious, "routine commercial behavior" not actionable under the California Constitution. Indeed, "[e]ven disclosure of very personal information [like personal data, geolocation data, social security numbers, and plaintiffs addresses] has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *Yahoo Mail*, 7 F. Supp. 3d at 1038; *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (holding that "[e]ven disclosure of…social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). Far from these examples, Plaintiff alleges that Edfinancial disclosed to Google only anonymized metadata in the form of CID, webpage URLs, and fingerprinting data—all anonymized record data that Plaintiff only speculates Google could "link" to a particular user. (Complaint ¶¶ 57-59, 74).

This Court has held that disclosure of far more sensitive information could not sustain an invasion of privacy claim. For example, in *In re iPhone Application Litigation*, this Court dismissed invasion of privacy claims even though the complaint alleged that defendants disclosed plaintiffs' addresses, current whereabouts, unique device identifier assigned to the device, the user's gender, age, zip code and time zone, and the functions plaintiff performed on the app. 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The comparatively generic account and device information alleged here—anonymous CID, webpage URLs, and fingerprinting data—is far less sensitive than the information at issue in *iPhone Application Litigation*, where the court noted that even "conduct that leads to theft of highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct under the California Constitution." *Id*.; *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) (disclosure of "names, emails, phone numbers, addresses, social security numbers, browsing histories, and user locations" through healthcare website were not highly offensive).

///

///

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

DATED: April 24, 2026

BUCHALTER LLP

By: */s/ Samuel D. Sazer*
SAMUEL D. SAZER
Attorneys for Defendant
EDFINANCIAL SERVICES, LLC