**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AMELIA STRAIGHT, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EDFINANCIAL SERVICES, LLC,

Defendant.

Case No. 3:26-cv-01807-JSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: July 9, 2026
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Jacqueline Scott Corley

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. PLAINTIFF HAS ARTICLE III STANDING ........ 2

II. DEFENDANT IS LIABLE UNDER THE CRIME-TORT EXCEPTION OF THE ECPA ........ 6

III. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631 ........ 9

A. The Party Exception Does Not Apply To Plaintiff's CIPA Claims Because CIPA Is An All-Party Consent Statute ........ 9

B. Defendant Aided And Abetted Google's Unlawful Interception ........ 10

C. Defendant Aided Google With Intercepting The Contents Of Plaintiff's Communications While In Transit ........ 12

IV. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632 ........ 15

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ........ 15

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Allison v. PHH Mortgage*,
2026 WL 899438 (N.D. Cal. Mar. 27, 2026) .................... 2, 7, 8

*Ambriz v. Google*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 2

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .................... 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .................... 9, 12

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .................... 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .................... 10. 14

*DellaSala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .................... 7, 8, 17

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .................... 14

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) .................... 14

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .................... 6

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .................... 3, 5

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .................... 3

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .................... 10

*Garcia v. Truist Fin. Corp.*, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) .......... passim

*Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522 (C.D. Cal. Mar. 31, 2026) .......... 15

*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 13

*Goldstein v. Rumble Inc.*, 2025 WL 3691987 (C.D. Cal. Nov. 6, 2025) .......... 11

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Humphrey v. J.M. Smucker Company*, 2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 2

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 3, 9, 15, 17

*In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 12

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 12

*In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 13

*In re Zynga Priv. Litig*., 750 F.3d 1098 (9th Cir. 2014) .......... 12

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) .......... 9

*Jones v. Skullcandy Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 4

*Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 3, 4

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 2

*Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 5

*Marden v. LMND Medical Group, Inc.*, 2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 8

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ... 11

*Moskowitz v. Superior Court*,
137 Cal.App.3d 313 (Cal. Ct. App. 1982) ... 4, 17

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) ... 3

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... 3

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) ... 13, 14

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ... 7, 12

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ... 6, 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ... 9

*Riganian v. LiveRamp Holdings Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ... passim

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ... passim

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ... 11, 15, 17

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ... 4, 16

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ... 2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ... 3

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ... 6

*Tash v. Vision Service Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) ... 5

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ... 10

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 14

*Tourgeman v. Collins Fin. Servs., Inc.*,
2009 WL 6527758 (S.D. Cal. Nov. 23, 2009) .......... 4, 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 15

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 13

*Valley Bank of Nevada v. Superior Court*,
15 Cal. 3d 652 (1975) .......... 4, 16

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 15

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 14

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 5

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .......... 13

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 10

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024). .......... 11

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) .......... 8, 15, 18

**STATUTES**

28 U.S.C. § 2511 .......... 1

Article I, Section 1 of the California Constitution .......... 4, 17

Cal. Fin. Code § 4051 .......... 1, 6

Cal. Fin. Code § 4051(a)–(b) .......... 16

Cal. Fin. Code § 4052 .......... 16

Cal. Fin. Code § 4052.5 ..... 16

Cal. Pen. Code § 31 ..... 15

Cal. Pen. Code § 631 ..... 1

Cal. Pen. Code § 632 ..... 1

Cal. Pen. Code § 632(a) ..... 9

Public Law 106-102 ..... 16

**REGULATIONS**

16 C.F.R. § 313.1 ..... 1

16 C.F.R. § 313.3 ..... 16

**INTRODUCTION**

Congress and the California Legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. *See* 16 C.F.R. § 313.1, *et seq.*; Cal. Fin. Code § 4051; *see also Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (denying motion to dismiss ECPA and CIPA claims where plaintiff alleged defendant intercepted and unlawfully disclosed personal and financial information); *Garcia v. Truist Fin. Corp.*, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) (same).

Defendant EdFinancial Services, LLC, ("Defendant" or "EdFinancial"), a student loan provider entrusted with the sensitive financial information of student loan borrowers, violated the law by embedding Google Analytics on edfinancial.studentaid.gov (the "Website"). While Plaintiff and Class Members navigated their private loan accounts, Defendant intercepted and disclosed their private financial communications to Google, in real time, so Google could analyze, monetize, and advertise to them. Such conduct is prohibited under the Electronic Communications Privacy Act ("ECPA"), 28 U.S.C. § 2511, *et seq.*, California Penal Code ("CIPA") §§ 631–32, and the California Constitution.

The Complaint ("Compl.") (ECF No. 1) alsleges precisely what the courts in *Shah* and *Garcia* held actionable: transmission to a third party of personally identifiable information (cid, browser fingerprint, IP address, and device information) (Compl. ¶¶ 55–65, 71, 74, 77), and sensitive financial information ("Custom Events" and detailed URLs) (Compl. ¶¶ 32, 56, 75), constitute the disclosure of nonpublic personal information protected under the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA"). Specifically, Defendant unlawfully intercepts and discloses its student loan borrowers' personal and financial information to Google, LLC ("Google")—an unknown third party—when borrowers navigate their private financial portals on Defendant's Website. Compl. ¶¶ 67–81 & Figs. 1–4.

Defendant's motion recycles arguments routinely rejected by courts throughout the Ninth Circuit and relies on mischaracterizations of law and fact. But there is a reason why courts have

repeatedly denied similar motions to dismiss involving financial institutions. *See*, *e.g.*, *Shah*, 768 F. Supp. 3d 1033; *Garcia*, 2026 WL 972328; *Allison v. PHH Mortgage*, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026). It is because Defendant's arguments are incorrect. For the reasons detailed herein, Plaintiff respectfully requests this court deny Defendant's motion to dismiss (the "Motion" or "MTD") (ECF No. 13) in full.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendant argues Plaintiff's "allegations about information Google could theoretically collect are insufficient to establish the concrete and particularized injury required for Article III standing." MTD at 10. That is wrong. This case concerns information Google *did* collect, as demonstrated by the Complaint's screenshots. More fundamentally, however, Defendant's argument

rests on a mischaracterization of the pleadings, an outdated view of the law, and a misreading of *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . . . [i]t is not necessary . . . for a plaintiff asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists"). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa*, 153 F.4th at 789 (citing *TransUnion*, 594 U.S. at 424) (quotations omitted). The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *2–4 (N.D. Cal. Jan. 27, 2026) (same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037–41 (S.D. Cal. 2023) (same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579–80 (N.D. Cal. 2025) (same); *Gabrielli v. Haleon US Inc*., 815 F. Supp. 3d 852, 863–67 (N.D. Cal. 2025) (collecting cases).

Defendant suggests "Plaintiff here fails to identify any 'embarrassing, invasive, or otherwise private information' collected by Google." MTD at 11. That is wrong, and Plaintiff is not complaining about the collection of anonymous browsing data at issue in *Popa*, as Defendant suggests. MTD at 11. Rather, she alleges—with example screenshots and detailed allegations—Defendant disclosed to Google, in real time, "when users make a payment on their loans (Figure 1),

how users allocate payments (e.g. Figure 2), and the reasons users request a deferment, forbearance or other repayment options[,]" alongside their PII. Compl. ¶ 73; *see also id.* ¶¶ 2–4, 6–7, 55–56, 67–81, Figs. 1–4. The Complaint further explains how the Google 'cid' serves to "identify users as they navigate the Edfinancial Website," Compl. ¶ 57, and because Google already possesses Plaintiff's name, e-mail and phone number, Google matches this information to a borrower's specific identity. Compl. ¶¶ 74–80. "Where anonymity is rendered 'functionally meaningless,' lower courts have found 'pseudonymization' arguments unpersuasive." *Krzyzek*, 2026 WL 206855, at *4 (citing *Riganian v. LiveRamp Holdings Inc.*, 791 F. Supp. 3d 1075, 1086–87 (N.D. Cal. 2025)). Defendant's attempts to recharacterize the 'cid,' browser fingerprinting, IP address and device information as anonymous contradicts Plaintiff's allegations. *E.g.* Compl. ¶ 22 (under the GLBA personally identifiable financial information includes "an information collecting device from a web server"), ¶ 27 (same under CalFIPA), ¶¶ 46, 56–65, 74, 77 (Google's user-ids, fingerprinting can be linked to specific individuals).

Put simply, Plaintiff's allegations fall squarely within the category of a privacy interest long recognized by California courts. *See generally Shah*, 768 F. Supp. 3d at 1044–45; *Garcia*, 2026 WL 972328 at *5–6, *12; *Jones v. Skullcandy Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (collecting cases); *see also Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656 (1975) ("we may safely assume that the right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life"); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944–45 (N.D. Cal. 2024) ("sensitive financial information" is legally protected); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 (S.D. Cal. Nov. 23, 2009) ("There can be little question that Plaintiff has a legally protected privacy interest in his private financial information"); *Moskowitz v. Superior Court,* 137 Cal.App.3d 313, 315–16 (Cal. Ct. App. 1982) ("Personal financial information comes within the zone of privacy protected by Article I, Section 1 of the California Constitution.").

Information about a borrower's student loan payments and repayment options is also protected by the GLBA and CalFIPA. Compl. ¶¶ 4, 6–7, 20–30. The unauthorized disclosure of such

protected financial information is thus sufficient to confer statutory standing under Article III. *See generally Garcia*, 2026 WL 972328, at *5–6 (finding Article III standing in an analogous case).

Defendant's suggestion that Plaintiff lacks a "cognizable harm" because she has not alleged a specific instance of targeted advertising (MTD at 12–13) confuses a symptom of the harm with the injury. Whether Plaintiff later received a targeted advertising is irrelevant; the privacy injury occurred the moment Defendant transmitted her communications to Google without consent. *Tash v. Vision Service Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) ("Defendants are incorrect that [plaintiff's] failure to allege he was subjected to targeted ads because of this disclosure deprives him of an injury worthy of standing . . . Importantly, 'privacy torts do not always require additional consequences to be actionable.' . . . The harm inflicted by the intrusion itself permits liability.") (cleaned up); *Frasco v. Flo Health, Inc.*, 349 F.R.D. at 579 ("the legal injury at the heart of plaintiffs' case -- the capture of personal information without a user's consent -- occurs when the personal information is obtained in the first instance. The fact that misappropriated data may be anonymized by stripping it from its owner and blending it with other data does not cure or wash away the original violation.").

Defendant's reliance on *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025) and *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) is misplaced. The *Wooten* court's opinion turned on two key points—(1) the collection there was a "one-time collection and dissemination" and (2) the plaintiffs did "not allege that the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information.'" *Id.* 1145–46. Neither is present here. *Compare Wooten*, 807 F. Supp. 3d at 1145–46; *with* Compl. ¶¶ 1–4, 6–7, 29, 31–35, 67–81. Similarly, the *Magliocca* court's reasoning turned on the non-sensitive nature of the data disclosed (IP address) from a single website visit. *Magliocca*, 2026 WL 878694, at *3–4. Here, the disclosure is repeated and continuous because Plaintiff must log in to her portal and make monthly payments to avoid accruing interest or entering default. Moreover, Plaintiff did not have a choice in her student loan provider such that she has no way to prevent future disclosures when she logs in to manage her loans. Compl. ¶ 7. Additionally, the nature of the information here

is inherently private because (1) it involves Plaintiff's interactions within her own loan portal, and (2) it is legally protected financial information under both the GLBA and CalFIPA. Compl. ¶¶ 5–7, 31–35, 67–81.

**II. DEFENDANT IS LIABLE UNDER THE CRIME-TORT EXCEPTION OF THE ECPA**

Defendant argues the ECPA's party exception bars Plaintiff's claims and that Plaintiff failed to allege an underlying criminal or tortious purpose. MTD at 13–15. That is wrong.

The party exception "has its own carve-out known as the crime-tort exception." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 848 (E.D. Cal. 2025) (cleaned up). Where the "primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously[,]" the party exception does not apply. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021).

***First***, Plaintiff alleges tortious and criminal conduct independent of the interception itself. Plaintiff alleges Defendant intercepted—and disclosed—Plaintiff's nonpublic personal financial information to Google in violation of the GLBA and CalFIPA. Compl. ¶¶ 20–35, 67–81, 90–125; *Doe*, 789 F. Supp. 3d at 849 (explaining the "intentional disclosure of private information constituted a further impropriety independent and separate from the interception of private information.") (cleaned up); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious."). Both statutes prohibit a financial institution—like Defendant—from disclosing nonpublic personal information to an unaffiliated third party without the consumer's explicit prior consent, and CalFIPA was enacted by the California Legislature to "afford persons greater privacy protections" than the GLBA. Cal. Fin. Code § 4051.

*Shah* is instructive. In *Shah*, the plaintiff alleged that the defendant installed third party tracking software, including tracking software from Google, that intercepted private information related to his account information. *Shah*, 768 F. Supp. 3d at 1041. The court denied the defendant's motion to dismiss, holding the defendant's actions were allegedly tortious. *Id.* at 1053; *Garcia*, 2026

WL 972328, at *10 (same); *Allison*, 2026 WL 899438, at *11 (finding allegations the defendant "installed trackers on its website to trade customers' sensitive financial information to reduce the cost of marketing services . . . . sufficient to allege a purpose to invade privacy for [the defendant's] profit, which triggers the crime-tort exception"); *Riganian*, 791 F. Supp. 3d at 1090–92 (applying the crime-tort to the ECPA).

Here, the Complaint outlines precisely how the information collected from Defendant's Website allows Google to personally identify Website users and connect them to actions taken within their private student loan portals. *See* Compl. ¶ 56 ("Google received at least 'Custom Events' and URLs that disclosed the financial services received by the user. Google also received additional PII, including but not limited to the users' IP address, device information, and User-IDs."); *id.* ¶ 71–72 ("Defendant shares its users' PII with its advertising partner, Google. The information shared by Defendant allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving . . . . For example, when a consumer logs into their Edfinancial account and makes a payment or opts for repayment and deferment options, Defendant discloses such information to Google through its use of Google Analytics); *id.* ¶¶ 73–81. The Complaint also includes detailed screenshots showing how Defendant discloses to Google when users make a payment on their loans (Figure 1), how users allocate payments (Figure 2), and the reason users request deferment or a forbearance (Figures 3 & 4).

***Second***, Defendant's argument that a commercial purpose undercuts the underlying tortious purpose falls flat. MTD at 14. A majority of courts, including this one, correctly hold that a commercial purpose does not insulate a Defendant from liability. *DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026) (Corley, J.) ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *R.S.*, 2025 WL 103488, at *7 ("a monetary purpose does not insulate a party from liability under the ECPA, at least at the motion to dismiss stage."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("even where a defendant is arguably motivated by monetary gain, the

crime-tort exception may nonetheless apply"); *Marden v. LMND Medical Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) ("[C]ontrary to [the defendant's] argument that any alleged interception was for [the defendant's] sole benefit and thus still within the party exception, [p]laintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers."); *Cooper v. Mount Sinai Health Systems, Inc.*, 742 F. Supp. 3d 369, 382 (S.D.N.Y. 2024) (explaining the defendant's "broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.") (collecting cases); *Riganian*, 791 F. Supp. 3d at 1090 ("this Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable.").

Defendant's reliance on *Zocco v. Nelnet, Inc.* disregards the weight of authority. *Compare Zocco v. Nelnet, Inc.*, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) (dismissing with leave to amend to permit the plaintiff to clarify the underlying GLBA/CalFIPA violations); *with Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 ("Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *Garcia*, 2026 WL 972328, at *10 ("Truist '*chose* to embed the LinkedIn Insight Tag on its Website, which it owns and operates,' . . . and, with this tag, Truist then disclosed to LinkedIn sensitive and confidential information provided by consumers . . . . Therefore . . . the Court finds that Garcia has plausibly alleged that Truist's purpose was, at the very least, tortious, thereby satisfying the crime-tort exception) (cleaned up").

Moreover, Defendant's purpose of invading the privacy of Plaintiff's and Class Members is independently sufficient to find the crime-tort exception applies. *DellaSala*, 2026 WL 1138358, at *10 (Corley, J.) ("Plaintiffs are not simply bootstrapping their Wiretap Act claim to their CIPA claims, but have alleged [the defendant] tortiously invaded their privacy to sell their personal data for a profit. At this early litigation stage, the Court declines to find this is not a basis for a Wiretap claim as a matter of law."); *Allison*, 2026 WL 899438, at *11 ("The complaint alleges that [the defendant] installed trackers on its website to trade customers' sensitive financial information to

reduce the cost of marketing services. That is sufficient to allege a purpose to invade privacy for [defendant's] profit, which triggers the crime-tort exception.") (citing *Riganian*, 791 F. Supp. 3d at 1091).

## III. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631

### A. The Party Exception Does Not Apply To Plaintiff's CIPA Claims Because CIPA Is An All-Party Consent Statute

Defendant argues it is exempt from liability under § 631 because the analysis for the party exception is the same under both the ECPA and CIPA. MTD at 15–16. That is wrong.

Defendant's argument overlooks a critical distinction between the two statutes: the ECPA is a one-party consent statute whereas CIPA which is an all-party consent statute.[1] *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("the California Supreme Court would interpret Section 631(a) to require the prior consent of ***all*** parties to a communication") (emphasis added); *Brown v. Google LLC,* 685 F. Supp. 3d 909, 937 n. 33 (N.D. Cal. 2023) (the defendant's "argument is problematic for another reason—it creates a workaround to CIPA's two-party consent rule . . . It would mean that if both parties to a communication agree that the communication may be recorded, then another party could simultaneously record the communication also. CIPA requires the opposite"). This is fatal to its argument. Because CIPA demands the consent of *all* parties, Defendant's consent to Google's presence on the Website is legally insufficient to invoke the party exception. Google would only have been permitted to intercept Plaintiff's communications ***if Plaintiff herself also consented***—which she did not. *See Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985) (explaining that CIPA's purpose is to protect speakers from the "simultaneous dissemination to an unannounced second auditor" of their communications). Plaintiff's lack of consent is self-evident: Plaintiff could not have consented because she did not know Google was there. Compl. ¶¶ 5–6, 29, 31, 33, 67, 120, 123; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users'

---

[1] Section 632(a) likewise prohibits any person from "intentionally and without the consent of ***all*** parties to a confidential communication" using an electronic device to eavesdrop upon or record that communication. Cal. Penal Code § 632(a) (emphasis added).

information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.").

**B. Defendant Aided And Abetted Google's Unlawful Interception**

Defendant next argues Plaintiff "fails to establish any predicate violation of the first three CIPA clauses by Google that Edfinancial could have 'aided and abetted[.]'" MTD at 16. That is wrong.

Contrary to Defendant's position that Plaintiff's Complaint is replete with allegations that Plaintiff did not consent to Defendant sharing her personally identifiable information and confidential financial information with non-party Google—nor could she, as Defendant's installation of the Google tracking technologies was unknown to her. Compl. ¶¶ 5–6, 29, 31, 33, 67, 120, 123. When read in conjunction with her allegations that Google uses this information for its own purposes (Compl. ¶¶ 10, 42–43, 55, 66, 71, 104), Plaintiff's allegations paint a clear picture: Defendant aided non-party Google's interception of Plaintiff's communications without consent, such that Defendant is liable under the fourth prong of Section 631. Such allegations are routinely held to be sufficient at the motion to dismiss stage. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972–73 (N.D. Cal. 2023) (finding that a plaintiff may state a claim for aiding liability against a defendant if the plaintiff adequately alleges that the third-party software provider has the capability to use the intercepted communications for any purpose other than providing them to the defendant); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) ("the Court rejects Motorola's passing contention that it cannot eavesdrop on its own communications"); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) ("Plaintiff Tate has pled facts that would support a viable claim that Invoca has violated the statute. Plaintiff's claims that VITAS has supported Invoca in doing so by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a). Accordingly, the Court finds that VITAS may be found liable under section 631(a) for its role in assisting Invoca's monitoring and analysis of calls made to VITAS."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D.

Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.").

As Judge Lin explained in *Ambriz v. Google*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025) there are two different approaches courts use when analyzing aiding and abetting under § 631:

> Ninth Circuit courts are frequently called upon to apply the guidance of *Ribas* and *Rogers* to software service cases, and a split has emerged in courts' application of Section 631(a) to these facts. Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the "extension test." Other courts require only that plaintiff allege the software vendor has the capability to use the data for its own purposes.

*Id.*, at *3.

Here, Plaintiff's allegations are sufficient under either approach. For example, the Complaint alleges that "Google has the capability to use and does use the wiretapped information for its own purposes," including targeted advertising. Compl. ¶ 119; *see also id.* ¶¶ 10, 42–43, 55, 66, 71, 104. Additionally, under the "extension test," the Complaint alleges that Google indeed uses the information it collects for its own purposes. ¶¶ 10, 42–43, 55, 66, 71, 104. At this stage, nothing more is required. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) (where the plaintiffs allege defendant had "the ability to use its record of the interaction for other purposes beyond just furnishing them to customer websites, the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement"); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("it is plausible to infer from [defendant's] alleged affirmative act of integrating the third-party code into its website that it knew [the third parties] would intercept [PII]"); *Ambriz*, 2025 WL 830450, at *3 ("Google does not dispute that it is technologically capable of using the call data for an independent purpose"); *Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *3 (C.D. Cal. Nov. 6, 2025) ("[W]hen data is transmitted to an independent entity that uses or is capable of using the data for that entity's own purposes, courts treat the third-party code as an eavesdropper and allow aiding and abetting claims to proceed against the website's owner."); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024)

("knowingly 'programm[ing] such third-party tracking technology into its website for advertising purposes and to increase its profits'" suffices to plead aiding and abetting'").

### C. Defendant Aided Google With Intercepting The Contents Of Plaintiff's Communications While In Transit

Defendant argues Plaintiff fails to state a claim under Section 631 because the "anonymized metadata says nothing about the substance of her communications with Edfinancial's website[,]" and Plaintiff did not "establish that Google 'read' or attempted to read the substance of Plaintiff's communications while they were in transit[.]" That is wrong.

***First***, Defendant's vague contention that it did not intercept and disclose the substance of her communications with the Website is based on misapprehensions of both law and fact. Courts throughout the Ninth Circuit agree that "content" should be construed broadly to include the names of buttons clicked and descriptive URLs. *See In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding that categories of the website, categories that describe the current section of the website, and referrer URL that caused navigation to the current page constituted "content"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d at 902 ("Content" includes "URLs which disclose search terms that reveal website users' personal interests, queries, and habits."); *Brown v. Google LLC*, 685 F. Supp. 3d at 936 ("The URLs, by virtue of including the particular document within a website that a person views, reveal much more information . . . divulg[ing] a user's personal interests, queries, and habits"). *In re Zynga Priv. Litig.* affirms Plaintiff's position, explaining that "[u]nder some circumstances . . . divulging a URL containing [a] search term to a third party could amount to a disclosure of the contents of a communication." 750 F.3d 1098, 1108–09 (9th Cir. 2014); *see also Shah*, 768 F. Supp. 3d at 1052–54; *Garcia*, 2026 WL 972328, at *11.

Here, the Complaint shows, with screenshots, exactly the kind of substantive transmissions that constitute content under CIPA and the ECPA. For example, Figures 1 and 2 depict Defendant intercepting and disclosing to Google information about payment and payment allocation

instructions; similarly Figures 3 and 4 depict disclosures pertaining to forbearance and deferment. Compl. ¶¶ 67–81; Figs. 1–4. This is not mere record information as. rather, the disclosures reveal (i) that the borrower is attempting to make a payment, (ii) that the borrower is changing her payment directions, and (iii) whether the borrower is experiencing financial hardship. *Id.* Such information constitutes content as it reveals the *substance* of Plaintiff's and other borrower's loan-management instructions to Defendant.

***Second***, Defendant suggests Plaintiff failed to allege Google read or attempted to learn the meaning of Plaintiff's communications in transit. However, this is a factual inquiry inappropriate to resolve on the pleadings. Here, Plaintiff alleges that Google's Tracking Technologies captured and processed the communications in real time as they traveled from her browser. Compl. ¶¶ 36–41 (explaining how HTTP requests work), Compl. ¶¶ 67–81 (explaining how the wiretaps function n Defendant's Website). Nothing more is required at this stage. *Riganian*, 791 F. Supp. 3d at 1092 ("whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question Torres decided only after a full evidentiary record at summary judgment"); *Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) ("[A]t the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured. . . . Indeed, a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game, for the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.") (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978–79 (C.D. Cal. 2023) (plaintiff "did not simply recite that there was real time interception, she added detail on how it occurs"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (finding "detailed description of the pixel and related technology at issue, including screenshots of the source code" sufficient); *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994 at *4–5 (N.D. Cal. June 23, 2025) (Corley, J.) (denying a motion to dismiss the plaintiff's § 631 claims).

Specifically, Plaintiff alleges that Google acquires communications through HTTP Communications in real time. *See* Compl. ¶¶ 36–40, 67–81, 75 ("Plaintiff's communications with Defendant were disclosed by Defendant to Google and/or intercepted in transit by Google, in real time, via detailed URLs, which contain the nonpublic personal information and personally identifiable information entered into the Website"), Figs 1–4. These transmissions occur "in real time" because "Google Analytics—as enabled by Defendant—routed Plaintiff's and California Class members' electronic communications to its servers." Compl. ¶ 124. A majority of courts within the Ninth Circuit accept allegations of "in transit" interception at the pleadings stage. *See*, *e.g.*, *Cousin*, 681 F. Supp. 3d at 1131 ("Plaintiffs plead that communications were intercepted in transit sufficient to survive dismissal under Rule 12(b)(6). Defendant's arguments . . . are best left for resolution at the summary judgment stage."). Plaintiff even provides examples of Google reading borrowers' communications in real time. *See* Compl. Figs. 1–4. Additionally, Plaintiff alleges facts demonstrating the interception occurred in California because according to Plaintiff, she "accessed her account with Edfinancial in California and made loan payments through the Website." Compl. ¶ 6.

Defendant's case law does not compel a different result, as Defendant's reliance on *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) conflates what is required to be alleged on the pleadings. There, the court was addressing the "in transit" requirement on a motion for summary judgment, not a motion to dismiss. *Doe*, 806 F. Supp. 3d at 1116–19; *see also Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989 (N.D. Cal. 2024) (motion for summary judgment); *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) (motion for summary judgment). Indeed, on the motion to dismiss the court in *Doe v. Eating Recovery Center* found "allegations that Meta's 'transmission of information through the Pixel is instantaneous' and that Meta's code redirects users' communications 'simultaneously as the actions and communications on the website take place'" sufficient. *Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024). This Court, in *R.C. v. Sussex Publishers, LLC*, rejected similar arguments by the

defendant. 2025 WL 1735994 at *4–5 (N.D. Cal. June 23, 2025) (Corley, J.) (denying motion to dismiss the plaintiff's § 631 claims). The same outcome is warranted here.

**IV. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632**

Defendant posits Plaintiff "cannot sustain a claim under § 632 for the fundamental reason that a party cannot 'eavesdrop' on its own conversations." MTD at 19. That is incorrect.

Although not explicit, Section 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31 . . . . In civil lawsuits for violations of section 632, courts have therefore imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability." *Smith*, 2025 WL 1085169, at *5. Thus, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026). Thus, Plaintiff plausibly alleges Defendant is liable as an eavesdropper under Section 632 under a theory of derivative liability. Compl. ¶ 33 (Defendant "enables Google Analytics to eavesdrop on those confidential communications using their respective wiretaps."); *id.* ¶ 67 ("Edfinancial voluntarily embedded the Google Analytics wiretaps on its Website. "); *see also supra* Section III.B.

**V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY**

To state a claim for invasion of privacy under the California Constitution, a plaintiff need only allege (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *Zocco*, 2026 WL 242037, at *8 (denying a motion to dismiss the plaintiff's invasion of privacy claim under similar facts); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (citation omitted).

***First***, Plaintiff alleges a legally protected privacy interest in her financial information, and actions taken within her private student loan portal. Compl. ¶¶ 3, 6–7, 20–35, 67–81, 142 ("The

highly sensitive and personal information of Plaintiff . . . consists of private and confidential facts and information regarding Plaintiff's . . . financial services that were never intended to be shared beyond private communications on the Website and the consideration of finance professionals"). The weight of the authority supports Plaintiff's position. *See*, *e.g.*, *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d at 944–45 ("sensitive financial information [falls into the category of legally protected information]"); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 ("There can be little question that [p]laintiff has a legally protected privacy interest in his private financial information."); *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d at 656 ("[W]e may safely assume that the right of privacy extends to one's confidential financial affairs").

That interest is reinforced by the GLBA and CalFIPA, which make "nonpublic personal information" confidential as a matter of law. 16 C.F.R. § 313.3; Cal. Fin. Code § 4052.5; Compl. ¶¶ 20–30. Indeed, CalFIPA expressly declares the California Legislature's intent "to afford persons greater privacy protections than those provided in Public Law 106-102, the federal Gramm-Leach-Bliley Act." Cal. Fin. Code § 4051(a)–(b); Compl. ¶ 25. The statutory privacy interests created by the GLBA and CalFIPA bolster the common-law privacy interest California courts have long recognized in confidential financial affairs.

***Second***, Plaintiff's expectation in the privacy of her financial information is reasonable. Indeed, Plaintiff's privacy interest arises from Defendant's disclosures of sensitive and confidential financial information and PII including: (1) her identity, (2) IP address, (3) device information, (4) browser fingerprint, (5) status as having student loan debt, and (6) nonpublic URLs with information about her student loans. *See* Compl. ¶¶ 2–4, 6–8, 20–35, 67–81. This is precisely the type of information people possess a reasonable expectation of privacy over, which is bolstered by its protected status under both the GLBA and CalFIPA. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 *et seq.* (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer); Compl. ¶¶ 20–35, 67–81. Plaintiff's expectations arose in a context where (i) she was required by Defendant to use the Website to manage her loans; (ii) she was interacting

within a logged-in, authenticated financial account portal; and (iii) her communications with Defendant concerned nonpublic personal financial information specifically protected by federal and state statute. Compl. ¶¶ 2–4, 6–8, 31–35, 67–81.

***Third***, as Defendant concedes "[c]ourts recognize that the offensiveness of the conduct typically cannot be resolved at the pleading stage, as this is a fact-specific inquiry." MTD at 20. Indeed, determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 606 ("The ultimate question of whether [defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (explaining factual questions pertaining to the degree of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" should not be resolved in a motion to dismiss) *DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *4 (same). A truly holistic consideration in this case should lead to the determination that Defendant's interception and disclosure of Plaintiff's data constitutes an egregious breach. Here, contemporary "social norms" are likely to render the disclosure of student loan status, for instance, as being highly offensive. *See* Compl. ¶ 3 ("[M]any student loan borrowers experience feelings of stress, anxiety, and shame related to their student loan debt."); *accord Moskowitz v. Superior Court,* 137 Cal.App.3d 313, 315–16 ("Personal financial information comes within the zone of privacy protected by Article I, Section 1 of the California Constitution.").

Defendant's central argument, i.e. that the Court can resolve this on the pleadings, relies on mischaracterizations of fact. MTD at 20–21. More specifically, Defendant argues the conduct is "routine commercial behavior" and that "EdFinancial disclosed to Google only anonymized metadata[.]" MTD at 21. This is belied by Plaintiff's Complaint, wherein she alleges Defendant

discloses both her personally identifiable information, as well as sensitive and confidential financial information. Compl. ¶¶ 32, 55–65, 71, 74–75, 77, Figs. 1–4.

*Zocco v. NelNet,* Inc. is instructive on this issue. There, the court explained:

> Plaintiffs allege that Nelnet shared "private and confidential facts and information regarding Plaintiff[s'] . . . financial services," and PII that Plaintiffs never intended to be shared "beyond private communications on the Website and the consideration of finance professionals." According to the complaint, the "information shared by [Nelnet] allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving." "For example, when a consumer logs into their Nelnet account and makes a payment or opts for repayment options, [Nelnet] discloses such information to Google through its use of Google Analytics." Against this backdrop, Plaintiffs have identified sufficient facts to survive a motion to dismiss.

*Zocco*, 2026 WL 242037, at *8 (internal citations omitted). Plaintiff's allegations mimic those of the plaintiff in *Zocco*. *See* Compl. ¶ 71 ("The information shared by Defendant allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving "), *id.* ¶ 72 ("when a consumer logs into their Edfinancial account and makes a payment or opts for repayment and deferment options, Defendant discloses such information to Google through its use of Google Analytics"), *id.* ¶ 142 (Plaintiff's communications related to financial services "were never intended to be shared beyond private communications on the Website and the consideration of finance professionals").

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: May 8, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*