BUCHALTER LLP
SAMUEL D. SAZER (SBN: 313037)
425 Market Street, Suite 2900
San Francisco, CA 94105
Tel: 415.227.0900
Fax: 415.227.0770
Email: ssazer@buchalter.com

BASS, BERRY & SIMS PLC
David R. Esquivel (*Pro Hac Vice*)
Kristian N. Smith (*Pro Hac Vice*)
21 Platform Way South, Ste. 3500
Nashville, TN 37203
Tel: 615.742.7782
Email: DEsquivel@bassberry.com; Kristian.smith@bassberry.com

Attorneys for Defendant
EDFINANCIAL SERVICES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMELIA STRAIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EDFINANCIAL SERVICES, LLC,<br><br>Defendant. | Case No. 3:26-cv-01807-JSC<br>*Assigned for All Purposes to:*<br>Hon. Jacqueline Scott Corley; Ctrm. 8<br><br>**DEFENDANT EDFINANCIAL SERVICES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(B)(1) AND 12(B)(6)**<br><br>Date: July 9, 2026<br>Time: 10:00 a.m.<br>Ctrm: 8<br>Judge: Hon. Jacqueline Scott Corley |

///

///

///

## TABLE OF CONTENTS


I. MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 6

A. Plaintiff Lacks Standing Under Article III.......................................................... 6

B. Plaintiff fails to state a claim under the ECPA because she cannot allege a tort or crime independent of the alleged disclosure.................................................. 11

C. Plaintiff fails to state a claim under CIPA § 631............................................... 14

1. The CIPA party exemption applies, and Plaintiff's CIPA claims should be analyzed consistently with ECPA ..................................................... 14

2. Plaintiff has not plausibly alleged that Google committed a predicate CIPA violation that Edfinancial could have aided and abetted................ 15

3. Plaintiff has not properly pleaded that any alleged disclosure occurred "in transit" ............................................................................................ 15

D. Plaintiff cannot state a claim under § 632 for the same reasons her claim fails under § 631(a) ........................................................................................... 16

E. Plaintiff's invasion of privacy claim fails.......................................................... 17

II. CONCLUSION........................................................................................... 199

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. PHH Mortgage*,
No. 25-CV-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) .......................... 7, 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .................................................................. 14

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ................................................................ 14

*Dellasala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ..................13, 15, 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................ 14

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025)........................................................................ 8, 11

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ........................ 10

*Garcia v. Truist Fin. Corp.*,
No. 2:25-CV-05753-MEMF-PVC, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026)......... 7, 8, 13

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ................................................................................... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................ 17

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................................................................. 14

*Jones v. Skullcandy Inc.*,
2026 WL 699819 (S.D. Cal. Mar 12, 2026).............................................................. 8

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ...................................................................... 8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ............................................................. 11, 13

*Magliocca v. United Healthcare Services, Inc.*,
2026 WL 878694 (E.D. Cal. Mar. 31, 2026)....................................................... 7, 8

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ........................................................................ 11

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)............................................................................... 7

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413, at *4.................................................................................................. 11

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026)............................................................ 12, 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)........................................................................................... 10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....................................................................... 8, 13

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)..................................................................... 18

*Rogers v. Ulrich*,
52 Cal. App. 3d 894, 125 Cal. Rptr. 306 (1975) ............................................................... 14

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..............................................................7, 8, 13, 18

*Smith v. YETI Coolers*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ............................................................................... 17

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200, 1202 (9th Cir. 1999) ...........................................................................11, 12, 13

*Tash v. Vision Serv. Plan*,
No. 2:25-CV-00762-DJC-JDP, 2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) ........8, 9, 10, 11

*Thomas v. Papa John's Int'l, Inc.*,
No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) .................................................. 14

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d at 1145 ............................................................................................ 7, 8, 11

*Xu v. Reuters News & Media Inc.*,
No. 24 CIV. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)............................... 11

*Zocco v. Nelnet*,
2026 WL 242037, at *5-6 (N.D. Cal. Jan. 29, 2026)............................................ ....12, 14, 18

*Zynga, Inc. v. Facebook, Inc.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................................................... 17

**Statutes**

CIPA § 631 .......... 14, 15, 16, 17

CIPA § 632 .......... 14, 16, 17

# I. MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff ignores the case law cited by Edfinancial concerning the information and "data collection" at issue here—namely, anonymized technical data and information akin to "observations by a store clerk"—and instead relies on cases involving the collection and dissemination of sweeping, sensitive personal information across several websites. Such cases are inapposite here. All of Plaintiff's arguments rely on her claims that Edfinancial shared "personally identifiable information" and "confidential financial information" with Google, but the Figures in the Complaint—which Plaintiff characterizes as examples of borrowers' communications Google allegedly intercepted—show only URL paths, anonymous "Client IDs," and device/browser metadata. The Figures disclose no borrower name, no payment amounts, no account balances, no phone numbers or email addresses, and no other fields that personally identify the borrower or reveal the substance of communications or conduct within Edfinancial's portal. Plaintiff thus has provided no plausible factual or legal basis for her claims, and they should be dismissed.

## A. Plaintiff Lacks Standing Under Article III

As explained in Edfinancial's Motion, Plaintiff has not alleged any "embarrassing, invasive, or otherwise private" information that was actually shared with Google. Indeed, Plaintiff alleges only that Edfinancial disclosed anonymized record information, offering mere speculation about what Google could do with such information using its own technologies and based upon information Plaintiff voluntarily and independently provided to Google. In the Opposition, Plaintiff argues that Google "matches this information to a borrower's specific identity." (Opp. at 4.) But the paragraphs cited by Plaintiff do not allege that Edfinancial provided Google with information identifying Plaintiff. In fact, the Opposition admits that Google had previously obtained "Plaintiff's name, e-mail and phone number" directly from Plaintiff. (*Id.*) The cited paragraphs simply describe Plaintiff's theory that Google can identify the user, including through sophisticated but allegedly accurate browser fingerprinting. Although Plaintiff alleges Edfinancial "disclosed [Plaintiff's] personally identifiable information ('PII') to Google—communications that contained Plaintiff's confidential, 'nonpublic personal information' as defined by the GLBA and CalFIPA" (Compl. ¶ 6),—Figures 1-4 in the Complaint reveal only anonymous CID numbers (numbers that Google

assigns to a particular device and browser combination), generic page-category URLs without any search inquiries, and device metadata. None of this information identifies Plaintiff. (*Id.* ¶ 73, Figs. 1-4.) Further, Figures 3-4 are examples of information conveyed when a borrower applies for various kinds of forbearances.[1] As Edfinancial stated in its Motion, Plaintiff never alleged she herself applied for a forbearance or deferment. Plaintiff does not contest this, and thus Figures 3-4 do not apply to Plaintiff.

Doubling down on this theory, Plaintiff largely ignores the cases cited by Edfinancial holding that the alleged disclosure of information nearly identical to what was allegedly shared here (i.e. browser information, device information, button clicks, URLs, etc.) does not demonstrate an injury for Article III standing. *See Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) ("collection and dissemination of plaintiffs' IP and email addresses" are insufficient to constitute a privacy injury); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) ("Courts have been unwilling to find a cognizable privacy interest in browsing data from users on Defendant's own website."); *Magliocca v. United Healthcare Services, Inc.*, 2026 WL 878694, at *3 (E.D. Cal. Mar. 31, 2026) ("Where the collection of information is more reminiscent of 'a store clerk's observing shoppers,' no concrete privacy injury arises; this is often the case when the tracking software monitors IP addresses and other rudimentary browsing activity.")

Plaintiff's reliance on *Garcia* as an "analogous" case is misplaced. *Garcia* involved alleged disclosure of information by a bank to LinkedIn, including information relating to a person's citizenship, housing status, and employment. *Garcia v. Truist Fin. Corp.*, No. 2:25-CV-05753-MEMF-PVC, 2026 WL 972328, at *12 (C.D. Cal. Mar. 25, 2026).[2] As the Court in *Garcia*

---

[1] Edfinancial's arguments regarding the anonymization of the information allegedly provided to Google do not "contradict" Plaintiff's allegations. Plaintiff merely alleges that such information "can" be linked to users through information Plaintiff separately and voluntarily provided to Google, not that Plaintiff's information was actually shared and linked to her.

[2] Plaintiff repeatedly refers to Edfinancial as a "financial institution" in her Opposition. However, Edfinancial is not a "financial institution" in the same way the banks and lenders in *Garcia*, *Shah*, and *Allison* are. Edfinancial contracts with the U.S. Department of Education to act as the servicer for federal student loans. Edfinancial does not originate loans or lend any money. Accordingly, it does not "advertise" or seek out customers like a bank or credit card company.

recognized, "[s]haring information relating to citizenship particularly violates social norms." *Id*. No such information was alleged to be disclosed here. *Shah* is similarly inapposite. In *Shah*, plaintiffs alleged they put their personal and financial information, "including employment information, bank account information, citizenship status, and credit card preapproval or eligibility, into Defendant's website and then received third- and fourth-party advertisements," indicating Plaintiffs' information was actually shared and they received targeted advertisements. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044–45 (N.D. Cal. 2025).[3]

Likewise, in *Frasco*, the defendant disclosed identified PHI—menstruation data, pregnancy status, and sexual activity details, transmitted alongside persistent identifiers capable of identifying specific individuals—and the court held that ***subsequent*** anonymization of that data "does not cure or wash away the original violation." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025). The opposite is true here: Edfinancial allegedly disclosed anonymized data—CIDs, generic page-category URLs, and device metadata—and the fact that a third party might later de-anonymize that data using information Plaintiff herself voluntarily provided to Google does not transform the original disclosure into a privacy violation. The alleged data disclosures here are much more similar to those in *Magliocca* (button clicks, page visits, scrolls, session lengths, URLs, and IP addresses) and *Wooten* (disclosure of an email address and IP address) than in *Garcia*, *Shah*, or *Frasco*.

*Tash*, a case cited by Plaintiff, is instructive. In *Tash*, two plaintiffs, Tash and Hahn, argued they had Article III standing for alleged tracking violations. The court held that plaintiff Tash had standing because he alleged that he accessed his vision insurer's (VSP) website and used "every filtering feature available to obtain the narrowest selection," which communicated the following:

[3] The other cases relied upon by Plaintiff are similarly inapposite. *See Jones v. Skullcandy Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026), at *3, 5 (transmission of "names, email addresses, and Facebook/Google account identifiers"); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863–64 (N.D. Cal. 2026) (allegations that OpenX created or added to detailed user profiles by tracking their interactions across the internet and allegedly "gained a cradle-to-grave profile without users' consent."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1082 (N.D. Cal. 2025) (alleging that LiveRamp's clients bought and sold "segments" of digital identifiers associated with people with cancer, union members, Muslims, Jewish people, African Americans, poor people, payday loan prospects, online gamblers, unemployed individuals who were 'seen at clinics/hospitals' and users of the LGBT dating app Grindr, as well as segments relating to "reproductive health and rights, pregnancy, and fertility.") Plaintiff here does not allege data collection and sharing that is anywhere close to what was allegedly collected and shared in these cases.

(1) the type of physician or medical provider he was seeking; (2) the specific medical services he was seeking; (3) the vision products sought during his visit; (4) his location; and (5) additional details about his desired physician and their practice area. *Tash v. Vision Serv. Plan*, No. 2:25-CV-00762-DJC-JDP, 2026 WL 1012680, at *1 (E.D. Cal. Apr. 14, 2026). However, the court held that plaintiff Hahn did not have standing because he did not allege such specific disclosures. *Id*. at *2.

Unlike Tash, Hahn only alleged that he "communicated his Private Information to VSP when he used his phone and computer to access the Web Properties in July 2024 to search for an in-network healthcare provider in his geographic area." *Id*. at *4. He alleged VSP distributed the "search parameters" he used on the site and the "contents of his communications." *Id*. The court held that these allegations contained "notably less specificity" than Tash's. *Id*. Unlike Tash, who "recalls using every filtering feature available to obtain the narrowest selection," Hahn solely stated that his "search parameters" were sent to third parties without identifying how the information transmitted was "private." *Id*. As the Court recognized, failure to allege the specific things the defendant allegedly disclosed about Hahn himself (not just what could generally be collected and disclosed) meant there was no standing:

> Though it is possible Hahn selected search parameters within the 'Find an Eye Doctor' form that revealed information similar to Tash's, such as the type of doctor and treatment he sought, the Court cannot conclude that he did so solely based on these allegations. For example, Hahn may have only selected the parameters for 'Hours & Scheduling.' Without describing the type of information contained in Hahn's search parameters or how it was 'embarrassing, invasive, or otherwise private,' this allegation does not confer standing.

*Id*.

Here, Plaintiff's allegations mimic Hahn's (no standing) rather than Tash's (standing). Like plaintiff Hahn, Plaintiff generally alleges that her "URLs" and "page views" were transmitted to Google, without identifying any specific "embarrassing, invasive, or otherwise private" information that was transmitted. Indeed, Plaintiff alleges that Google could receive information regarding forbearances, deferments, etc. but does not actually allege Plaintiff ever accessed webpages regarding forbearances, deferments or any other "sensitive" personal information beyond generally logging in to the website. Plaintiff's allegation that general information about student loan accounts was sent along with a CID and device/browser metadata is not sufficient. *See Tash*,

2026 WL 1012680, at *5 (finding that despite allegations that "the information Meta received 'was sent alongside Plaintiffs' and Class Members' IP address, Facebook ID (c_user cookie or 'FID'), and other persistent device identifiers,' the disclosure of this information alone does not inflict a concrete injury.")

Because Plaintiff does not include any specific information about her personal information that was allegedly transmitted to Google, Plaintiff's allegations are solely about what Google could theoretically do upon receipt of information at Figures 1-4. The Ninth Circuit has found such capability-based allegations insufficient to establish standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791–92 (9th Cir. 2025); *see also* Mot. at 9-10.

Plaintiff misstates Edfinancial's argument regarding her failure to plead cognizable harm. It is not just that Plaintiff failed to allege she was subject to "targeted advertisements"; Plaintiff fails to allege that Google misused her information ***in any way*** that caused cognizable harm. As Edfinancial stated in its Motion, Plaintiff cannot establish standing based on mere hypothetical risks of future harm from Google's conduct. (Mot. at 10.) Plaintiff alleges only that Google has the capability to create browser fingerprints and engage in targeted advertising—not that Google actually used such capabilities to target Plaintiff. (Opp. at 5.) Plaintiff's reliance on what Google could do, absent any allegation of what Google actually did, is insufficient to state an injury-in-fact. (Mot. at 9.); *see also Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) ("At best, the FAC alleges that Defendant's conduct amounted to informing a third party about Plaintiff's interactions with its website. This argument is not sufficient to show that Defendant caused any injury Plaintiff may have suffered as a result of visitor data aggregated by those third parties.").

Nor is Plaintiff's identity-linking theory reasonably traceable to Edfinancial. Plaintiff alleges that Google could connect the CID and browser metadata to her identity because Google already possessed information Plaintiff voluntarily gave Google, including her name and phone number. That theory depends on Google's own preexisting relationship with Plaintiff and Google's alleged post-receipt matching capabilities—not any identifying information that Edfinancial allegedly transmitted to Google.

Plaintiff makes no attempt to distinguish the cases cited by Edfinancial to support this argument, again relying on *Tash* (where the plaintiff who failed to allege specific harms did not have standing) and *Frasco* (where extremely sensitive health information was allegedly disclosed). As in the cases cited by Edfinancial in its Motion[4], Plaintiff here also fails to allege any harm that has resulted from the alleged disclosure of information such as CIDs and URLs to Google, relying instead on conclusory allegations about what Edfinancial "could" gain.

**B. Plaintiff fails to state a claim under the ECPA because she cannot allege a tort or crime independent of the alleged disclosure**

Despite Plaintiff's attempts to argue an independent tort, her ECPA claim fails to allege a tort or crime independent of the alleged disclosure itself. Plaintiff cannot simply assert "that Defendant's conduct was illegal or tortious." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). The focus must instead be on "whether the purpose for the interception—its intended use—was criminal or tortious," not whether the interception incidentally violated another law. *Id.* (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

Alleged violations of the GLBA and CalFIPA are not "independent" of the disclosure. First, Plaintiff fails to establish a predicate violation of the GLBA or CalFIPA to supply the requisite tort. Plaintiff does not and cannot allege a predicate violation of the GLBA or CalFIPA because those statutes only prohibit disclosure of "nonpublic personal information" (GLBA) or "personally identifiable financial information" (CalFIPA). As explained in the Motion (at pp. 9-10) and Section A above, the Complaint's allegations and Figures indicate only anonymized technical and

---

[4] *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d at 1145 (no standing where plaintiffs were not "subject to any…targeted advertising" even when the plaintiff alleged third-party trackers have the *capability* to use information to engage in ID bridging, which could result in targeted advertising, because the plaintiff did not allege that she was actually subject to any such targeting); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *4 (conclusory allegations about what information defendants "could" gain were insufficient to establish concrete harm to plaintiff); *Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (finding no standing when the plaintiff did not allege that he "received any targeted advertising or was otherwise affected, much less that [he] was concretely harmed by any such advertising."); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing CIPA and ECPA claims absent "allegations suggesting a risk of future harm to them is imminent or substantial").

navigational data—URL paths reflecting page categories, anonymous Client IDs, and device/browser parameters. They do not show the borrower's identity, payment amounts, account data, or other person-specific financial facts. Those allegations do not plausibly allege a GLBA/CalFIPA violation.

Second, while Plaintiff argues that a profit motive does not entirely foreclose application of the crime-tort exception, she entirely disregards her affirmative obligation to show an independent tortious purpose beyond the interception itself. In this regard, Judge Wise's decision in *Zocco* is directly on point.[5] Although Plaintiff calls *Zocco* "against the weight of authority" (and does not attempt to distinguish it in any other way), she later relies on *Zocco* and calls it "instructive." (Opp. at 8, 18.) And it is instructive, as it involved nearly identical allegations relating to installation of Google Analytics made against another student loan servicer pursued by the same counsel. *Zocco* correctly applied Ninth Circuit law holding that a tortious purpose only exists if interception is "done for the purpose of facilitating some further impropriety, such as blackmail." *Sussman*, 186 F.3d at 1202. The *Zocco* court acknowledged that the crime-tort exception may apply even where a defendant is "motivated by monetary gain," but nonetheless held Nelnet's alleged violations of CalFIPA and the GLBA were insufficient to establish the crime-tort exception because plaintiff did not allege sufficient facts to support "that the purpose of the interception was to perpetuate a crime or tort." *Zocco v. Nelnet*, 2026 WL 242037, at *5-6 (N.D. Cal. Jan. 29, 2026).

The same is true here. While the Complaint repeatedly asserts that the information was intercepted for "targeted advertising purposes" and that the disclosure itself was unlawful, it never alleges that Edfinancial disclosed Plaintiff's financial information "for the purpose of committing a criminal or tortious act…separate from the act of disclosure." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *3 (W.D. Wash. Mar. 4, 2026) (dismissing ECPA claim with near-identical allegations that the interception was "for the purpose of committing a criminal or tortious act"). The only "purpose" alleged in the Complaint is the disclosure itself—which is

[5] The procedural history in *Zocco* is also instructive here. The court dismissed the ECPA and CIPA claims for failure to plead the crime-tort exception, and Nelnet's subsequent motion to dismiss the amended complaint argued that the amended pleading still failed to add material facts curing the defect.

precisely the circular allegation that *Zocco*, *Nichols*, and *Lakes* found insufficient.

Plaintiff's reliance on *Garcia*, *Shah* and *Riganian* is again misplaced. As discussed above, these cases involve the disclosure of highly sensitive information, such as citizenship, credit card applications, and sexual orientation and race. *Shah* is also not "instructive" on this point as Plaintiff claims. The court in *Shah* denied a motion to dismiss plaintiff's ECPA claim on the basis of the crime-tort exception in one sentence and with no analysis, stating: "Because Defendant's actions are allegedly tortious, the one-party exemption does not apply." *Shah*, 768 F. Supp. 3d at 1053. Moreover, the court failed to apply the Ninth Circuit's holding in *Sussman* that requires a tortious purpose beyond the interception itself.

Additionally, Plaintiff continues to rely on cases that are easily distinguishable: they involve sweeping collections of large swaths of highly sensitive data directly linked to an individual, not the anonymized clicks and URLs alleged to be collected here. *See Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) (alleging that Samba creates a series of "unique long-term identifiers" that "track the TV, specific users, and each of their video-viewing sessions" and sends such information to a third party to create "Samba TV's Identity Graph, which enables Samba TV to identify and profile not only Plaintiffs' and Class Members' specific TVs, but each of their other personal devices, including their individual phones, tablets, and PCs through deterministic and probabilistic matching" and "Samba packages this identifiable information into a 'data-panel' and 'custom audiences' which identify individuals by attributes including 'demographics, hobbies, political beliefs, and more' and then Samba sells this information to advertisers and publishers"); *Allison v. PHH Mortgage*, No. 25-CV-05323-RFL, 2026 WL 1353827, at *2 (N.D. Cal. May 14, 2026) (alleging that PHH Mortgage shares users' pre-approval application activities with third parties, including Google, including informing Google when a user is starting a pre-approval application, whether the user has a coborrower, whether they own real estate, and whether they are applying for a purchase rather than a refinance, including information regarding applications and when those applications are finished).

///

///

**C. Plaintiff fails to state a claim under CIPA § 631**

**1. The CIPA party exemption applies, and Plaintiff's CIPA claims should be analyzed consistently with ECPA**

Plaintiff is incorrect that the one-party exemption does not apply to the CIPA claim and misconstrues the case law discussing similar CIPA claims. Ninth Circuit and California law are clear that a party cannot be held liable for "eavesdropping" on its own conversation. *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025); *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899, 125 Cal. Rptr. 306 (1975) ("a party to a conversation can record it without the other party's knowledge without incurring Section 631 liability"). Plaintiff's argument conflates the requirement of the absence of all parties' consent in order to satisfy all CIPA claim elements with the judicially recognized party exemption, which does not require all parties' consent. *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066 (C.D. Cal. 2023) (observing the same distinction and finding that the plaintiff, like Plaintiff here, "asks the Court to ignore the many federal cases finding a direct party exemption under Section 631(a). The Court declines to do so."). Plaintiff's reliance on *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) in support of her argument is misplaced. In *Javier*, the issue with regard to the CIPA claim was whether ActiveProspect, the software used for the alleged data collection, was a third party or was an "extension" of the defendant, such that it was not a third party. *Id*. And the discussion of this issue in *Brown v. Google* involved § 632, not § 631. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023). These cases have no bearing on whether Edfinancial can be held liable for a CIPA claim for eavesdropping, which it cannot.

Plaintiff also ignores the case law from the Ninth Circuit and this Court that specifically holds that the analysis for a CIPA claim is the same as the analysis under the ECPA. *Zocco*, 2026 WL 242037, at *6; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (stating that "[c]ourts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) (holding that CIPA claims were properly dismissed because the defendants were exempt from liability under the ECPA's party exception). Indeed, this Court in

*Dellasala*, a case heavily relied upon by Plaintiff, came to the same conclusion. *Dellasala*, 2026 WL 1138358, at *5 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

Accordingly, Plaintiff's CIPA claims should be dismissed for the same reasons set forth in Section B above—namely, that Plaintiff does not plausibly allege Edfinancial acted with the primary purpose of committing a tort independent of the alleged interception.

**2. Plaintiff has not plausibly alleged that Google committed a predicate CIPA violation that Edfinancial could have aided and abetted**

Even apart from the party exemption, Plaintiff's aiding-and-abetting theory fails because she does not plausibly allege that Google violated any of the first three clauses of § 631(a). The Complaint's screenshots and allegations do not show that Google tapped a wire, read the substance of Plaintiff's communications while in transit, or used information unlawfully obtained through a predicate violation. At most, Plaintiff alleges that Google received anonymized data that it later processed for analytics, which is not enough to plead the underlying CIPA violation required for derivative liability.

Plaintiff's Opposition underscores the problem by relying on Google's alleged capability to use data for its own purposes, rather than facts showing that Google actually learned the contents or meaning of Plaintiff's communications while they were being transmitted. Capability allegations may matter in some "extension" cases, but they do not substitute for pleading the statutory elements of a predicate § 631(a) violation.

**3. Plaintiff has not properly pleaded that any alleged disclosure occurred "in transit"**

Additionally, Plaintiff's CIPA claims fail because any alleged eavesdropping did not occur in transit. This Court recently granted a motion to dismiss a § 631 claim based on similar allegations in *Dellasala*. In that case, the plaintiff, like Plaintiff here, repeatedly alleged "real time" interception, but the allegations as to the defendant learning the contents of communications while in transit merely parroted the statute's language.[6] *Dellasala*, 2026 WL 1138358, at *5. Likewise,

[6] Compare Plaintiff's formulaic allegation that Google "read, attempted to read, and/or learned the

Plaintiff spends her opposition arguing she properly alleged the transmissions occurred "in real time" without providing any information about how Google learned the contents of the communications while in transit.

As this Court held in *Dellasala*, such conclusory allegations do not support any inference as to how the content is simultaneously read. *Id*. Further, the Court held that the plaintiffs' more specific allegations regarding how Samba's technology works compelled an inference Samba does not learn the contents while they are in transit:

> Samba TV processes and stores this data on its own systems—which it uses to create audiences, panels, and otherwise service advertising needs—all of which is tied back to the universal SambaID and user profiles it creates for specific individuals through its Identity Graph." That Samba processes the data once it is on its servers suggests the contents are not "read" or "learned" while in transit.

*Id*. Plaintiff's allegations are almost identical, and her Complaint confirms that it is only after Google: (i) receives; (ii) packages; (iii) processes; and (iv) stores data on its database that it ultimately generates reports and analyzes the data. (Compl. ¶¶ 53-54.) Plaintiff's CIPA claim should likewise be dismissed.

Finally, as explained in the Motion (at p. 13), and without any meaningful response from Plaintiff, the rule of lenity requires construing any statutory ambiguity in this penal statute in Edfinancial's favor.

**D. Plaintiff cannot state a claim under § 632 for the same reasons her claim fails under § 631(a)**

Plaintiff completely ignores Edfinancial's argument that any "aiding and abetting" claim

---

contents or meaning of electronic communications…while [they] were in transit" (Complaint ¶ 120) to the allegations in *Dellasala* that "Samba TV willfully, and without consent, read or attempted to read, or learn the contents and meaning of, Plaintiffs' and Class Members' communications with online services while those communications were in transit or passing over a wire, line, or cable, or were being sent or received within California through its tracking technology, as described herein. This interception happens prior to or at the same time they would be received by the intended recipient," and "Samba TV intercepted the content of these communications because it revealed precisely what video content Plaintiffs and Class Members were viewing at any given moment across cable, streaming services, video game consoles, and more. Samba TV learned, or attempted to learn the contents, of these communications while they were in transit or in the process of being sent or received." 2026 WL 1138358, at *6. The allegations in *Dellasala* had even more detail than Plaintiff's allegations, but the Court still found the allegations insufficient to plead the information was read "in transit."

under § 632 fails for the same reasons it fails under § 631(a), including the party exemption, the absence of an independent tortious purpose, the absence of any predicate CIPA violation by Google, and the failure to plead that Google learned the contents of Plaintiff's communications while they were in transit. *See Smith v. YETI Coolers*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (dismissing § 632 claim for aiding and abetting "for the same reasons" as dismissal of the plaintiff's § 631 aiding and abetting claim). As Edfinancial stated in its Motion and this Reply, any "aiding and abetting" claim necessarily fails.

Nor can Plaintiff avoid this defect by importing derivative liability into § 632. Unlike § 631(a), which expressly imposes liability on a person who "aids, agrees with, employs, or conspires with" another to commit the enumerated acts, § 632 contains no comparable aiding-and-abetting language. Plaintiff's attempt to use general aiding-and-abetting principles would rewrite the statute and erase the Legislature's decision to include derivative-liability language in one CIPA provision but not the other.

**E. Plaintiff's invasion of privacy claim fails**

Plaintiff argues she had a reasonable expectation of privacy in "sensitive financial information" or "private financial information" that she disclosed to Edfinancial during her login sessions. (Opp. at 15.) However, as explained in Section A *supra*, the allegations in the Complaint demonstrate that no such information was disclosed to Google through the Website.

Plaintiff names six categories of information she allegedly had a reasonable expectation of privacy in: "(1) her identity, (2) IP address, (3) device information, (4) browser fingerprint, (5) status as having student loan debt, and (6) nonpublic URLs with information about her student loans." (Opp. at 16.) But as explained in the Motion, Edfinancial decidedly did not disclose Plaintiff's identity or status as a student loan borrower to Google (Mot. at 6, 19), nor did it disclose her IP address. (Mot. at 6.) Indeed, Plaintiff's own Figures 1-4 demonstrate that the IP address is not one of the data fields shared with Google. The remaining categories (and IP address, too) refer to the type of record information that is insufficient to give rise to a reasonable expectation of privacy. *See Zynga, Inc. v. Facebook, Inc.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (no reasonable expectation of privacy in the URL of a website or in basic identification information); *Hammerling*

*v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022) ("name, address, and subscriber number or identity is record information," and "URLs are record information when they only reveal a general webpage address and basic identification information"); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) (no standing despite collecting IP address, geolocation data, and email address). Plaintiff makes no attempt to distinguish these cases.

Indeed, in *Shah*, a case heavily relied upon by Plaintiff, the court found that the disclosure of even more sensitive information, including employment information, bank account information, and eligibility for preapproval or approval for a credit card "does not rise to the level of an 'egregious breach of social norms'" and thus did not support a claim for invasion of privacy. 768 F. Supp. 3d at 1047.

Plaintiff relies on *Zocco* to support her invasion of privacy claim (Opp. at 18), but *Zocco* is distinguishable. In *Zocco*, Nelnet allegedly disclosed to Google the last four digits of borrowers' cell phone numbers and partial email addresses—concrete, partially identifying personal data—with information sufficient to allow "Google to know the identities of specific individuals as well as information related to the financial services they are receiving." *Zocco*, 2026 WL 242037, at *1, 8. The court declined to dismiss Nelnet's privacy claim because these disclosures included "the last four digits of a user's cell phone, and a user's partial email address" and thus plaintiff had "identified sufficient facts to survive a motion to dismiss." *Id*. (citing *Zocco* Compl. ¶¶ 72–73, 142).

Here, by contrast, the Complaint alleges the disclosure of only anonymous CIDs, general page-category URLs, and device/browser metadata. (Compl. Figs. 1–2.) It does not allege that the Figures disclosed Plaintiff's name, partial email address, partial phone number, account number, payment amount, loan balance, or any comparable personal identifier. The gap between partial phone numbers and email addresses alleged in *Zocco* and the anonymous CIDs and generic URLs alleged here matters under the "holistic" standard for assessing whether an intrusion is highly offensive.

///

///

///

**II. CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

DATED: May 22, 2026

BUCHALTER LLP

By: *_/s/ Samuel D. Sazer_*
SAMUEL D. SAZER
Attorneys for Defendant
EDFINANCIAL SERVICES, LLC