United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMELIA STRAIGHT,
Plaintiff,
v.
EDFINANCIAL SERVICES, LLC,
Defendant.

Case No. 26-cv-01807-JSC

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 13

Plaintiff, on behalf of a putative class of EdFinancial Services, LLC ("EdFinancial") account holders who have accessed and used EdFinancial's website (the "Website"), alleges EdFinancial violated privacy laws by disclosing Plaintiff's information "related to student loan debt" to Google, LLC ("Google"). (Dkt. No. 1 ¶¶ 1-4.)[1] Defendant's motion to dismiss Plaintiff's complaint is now pending before the Court. (Dkt. No. 13.) Having carefully reviewed the parties' submissions, the Court considers oral argument unnecessary, VACATES the July 24, 2026 hearing, and GRANTS Defendant's motion to dismiss with leave to amend. Plaintiff has failed to plausibly allege an injury in fact sufficient to confer Article III standing.

## BACKGROUND

### I. COMPLAINT ALLEGATIONS

Plaintiff "created her Edfinancial account in or around 2020" and "accessed her account with EdFinancial in California and made loan payments through the Website." (Dkt. No. 1 ¶ 6.) The Website allows users to "search for and browse financial services, open an Edfinancial account, and use Edfinancial's online financial services (*i.e.*, loan payment and loan refinancing)."

[1] Record citations are to the material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

(*Id.* ¶ 32.) "When doing so, Website users provide Defendant with confidential information, including 'nonpublic personal information,'" as defined by the Gramm-Leach-Bliley Act ("GLBA") and the California Financial Privacy Act ("CalFIPA"), "such as their PII and information about their financial activity with Edfinancial (e.g. account status, payment submissions, economic hardship applications)." (*Id.*) In addition, "Website users' confidential communications are the product of Website users affirmatively entering, and interacting with, information on the Website" by, for example, "typing into data fields, conveying responses to questions and prompts, and actively making other selections." (*Id.* ¶ 34.)

"Defendant has integrated the Google Analytics wiretaps into the Website to assist with its marketing efforts." (*Id.* ¶ 31.) "After signing into their account portals, Plaintiff and Class Members can utilize various financial services . . . through Edfinancial." (*Id.* ¶ 69.) However, "[a]s soon as users have logged into their account portals, where users view financial statements and pay, for example, their student loans, Defendant begins disclosing their information to Google," including "its users' PII" and information which "allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving." (*Id.* ¶¶ 70-71.) "For example, . . . Defendant discloses to Google when users make a payment on their loans[], how users allocate payments[], and the reasons users request a deferment, forbearance, or other repayment options[]." (*Id.* ¶ 73.) "In addition to users' IP addresses, Defendant, through Google's tracking technologies, disclosed information about their specific devices and User-IDs to Google, allowing Google to link such information to an individual's specific identity." (*Id.* ¶ 74.) Furthermore, Google serves "to identify users as they navigate the Edfinancial Website," and it "matches the IP addresses, device information, User-IDs, and partial phone numbers and email addresses it intercepts and links such information to an individual's specific identity." (*Id.* ¶¶ 65, 74.)

So, "Plaintiff's communications with Defendant were disclosed by Defendant to Google and/or intercepted in transit by Google, in real time, via detailed URLs, which contain the nonpublic personal information and personally identifiable information entered into the Website." (*Id.* ¶ 75.) In addition, "Plaintiff's . . . 'nonpublic personal information' . . . was intercepted in

transit by Google Analytics—as enabled by Defendant" without Plaintiff's consent. (*Id.* ¶¶ 21, 26, 29.)

## II. PROCEDURAL HISTORY

Plaintiff sued Defendant in federal court for: (1) violating the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, et seq.; (2) violating California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (3) violating CIPA, Cal. Penal Code § 632; and (4) invading Plaintiff's privacy in violation of the California Constitution. (*Id.* ¶¶ 90-154.) She alleges jurisdiction under the Class Action Fairness Act. Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of standing, and 12(b)(6) for failure to state a claim. (Dkt. No. 13.)

## LEGAL STANDARD

Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In a putative class action, at least one named plaintiff must have Article III standing. *See Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing her standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A "concrete" injury can include "intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. However, "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* at 417. The party invoking federal jurisdiction must identify a close "historical or common-law analogue for [the plaintiff's] asserted injury." *Id.* at 424; *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (explaining "whether an intangible harm constitutes injury in fact . . . both history

and the judgment of Congress play important roles" (cleaned up)). But, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Popa*, 153 F.4th at 789 (quotation marks and citations omitted). So, even if a plaintiff alleges a statutory violation, the plaintiff's injury must be concrete to satisfy Article III standing. *See TransUnion*, 594 U.S. at 426.

The Ninth Circuit recently addressed when disclosure of personal information constitutes an injury in fact. The court held the plaintiff's injury was not sufficiently concrete when she alleged a website's use of Microsoft Clarity's "session-replay technology" violated statutory and common law privacy laws. *See Popa*, 153 F.4th at 786-87. Clarity's technology allowed businesses to "intercept[] and record[] the website visitor's electronic communications with the . . . website, including their mouse movements, clicks, keystrokes . . . , URLs of web pages visited, and/or other electronic communications in real time." *Id.* at 786. The plaintiff alleged Clarity collected information about her mailing address and what pet supplies she browsed, ultimately "creat[ing] a video replay of [her] behavior on the website and provid[ing] it to [the defendant] for analysis." *Id.* However, because she identified "no embarrassing, invasive, or otherwise private information collected by Clarity," she did "not explain how the tracking of her interactions with the . . . website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' inferences or disclosures that were actionable at common law." *Id.* at 791. The Ninth Circuit therefore concluded she failed to allege an injury in fact sufficient for Article III standing. *Id.* at 795.

**DISCUSSION**

To allege a concrete injury sufficient to confer Article III standing, Plaintiff must plausibly allege Defendant distributed some "embarrassing, invasive, or otherwise private information" which "caused her to experience [a] kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791. But rather than allege any facts about what information she provided to Defendant, and Defendant then disclosed to Google, Plaintiff only alleges Defendant disclosed "communications," "nonpublic

personal information," and "personally identifiable information." (Dkt. No. 1 ¶¶ 4, 6, 21, 26, 29, 32, 75); *see Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("Because the injury depends on the nature of the information at issue, plaintiffs must identify the specific information allegedly disclosed." (cleaned up)). Furthermore, throughout her complaint, Plaintiff alleges she disclosed information, as defined by GLBA, 16 C.F.R. § 313.3(n), and CalFIPA, Cal. Fin. Code § 4050, without alleging what that information is. (Dkt. No. 1 ¶¶ 4, 6, 21, 26, 29, 32.) Plaintiff must allege what of her own financial information was disclosed to plausibly support a reasonable inference disclosure of such information was offensive. *See, e.g.*, *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019) (finding standing for disclosure of credit report including sensitive information like "credit standing, credit capacity character, general reputation, personal characteristics, or mode of living."). Plaintiff's conclusory allegations are insufficient to establish the necessary concrete injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)); *see also DellaSala v. Samba TV, Inc.*, No. 25-cv-03470-JSC, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (explaining because "Plaintiffs' allegations as to what [defendant] actually collects are unclear," the court could not "determine whether Plaintiff[s] ha[ve] a protectable privacy interest in that information." (cleaned up)).

Plaintiff's reliance on allegations about information Defendant generally discloses to Google is unavailing. For example, Plaintiff alleges Defendant discloses to Google "when users make a payment on their loans[], how users allocate payments[], and the reasons users request a deferment, forbearance, or other repayment options[]." (Dkt. No. 1 ¶ 73.) Plaintiff also alleges Google "matches the IP addresses, device information, User-IDs, and partial phone numbers and email addresses it intercepts and links such information to an individual's specific identity." (*Id.* ¶¶ 65, 74.) But Plaintiff does not allege ***she*** provided such information to Defendant or Defendant shared any specific information she provided with Google, let alone show that whatever unidentified information about Plaintiff shared with Google constitutes an injury traditionally recognized by American courts.

United States District Court
Northern District of California

Plaintiff's insistence "the nature of the information here is inherently private because [] it involves Plaintiff's interactions within her own loan portal, and [] it is legally protected financial information under both the GLBA and the CalFIPA" (Dkt. No. 18 at 5-6), is unpersuasive. As *Popa* emphasized, just because the legislature identifies an intangible harm by statute "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement." *Popa*, 153 F.4th at 789 (citations omitted). Further, as explained above, Plaintiff has not alleged facts that plausibly support an inference Defendant shared information about Plaintiff that is protected under either the GLBA and the CalFIPA.

The cases Plaintiff cites do not show she has sufficiently alleged her Article III standing. For example, in *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149 (C.D. Cal. 2026), the plaintiff alleged he had "provide[d] private information related to his citizenship, housing status, and employment information" to the defendant while applying for a loan on the defendant's website. *Id.* at 1161. But unlike in *Garcia*, Plaintiff does not "reasonably allege[] what PII was disclosed and captured by [Defendant] to implicate a protectable privacy interest" because she fails to allege what of her information—much less what of her "embarrassing, invasive, or otherwise private information"—has been disclosed. *Id.*; *see also Popa*, 153 F.4th at 791 (finding common law intrusion upon seclusion and public disclosure of private facts requires intrusion into "a sensitive sphere."). As explained above, Plaintiff alleges the disclosed information in general terms without describing what of her personally identifiable information was disclosed. (Dkt. No. 1 ¶¶ 4, 6, 21, 26, 29, 32.)

And in *Tash v. Vision Serv. Plan*, No. 25-cv-00762-DJC-JDP, 2026 WL 1012680 (E.D. Cal. Apr. 14, 2026), the court held plaintiff Tash had standing because he pled facts alleging highly offensive disclosure of identifiable information. *Id.* at *4. The *Tash* plaintiff also pled specific facts indicating the method in which such personal information was disclosed to third parties, "reveal[ing] his real-world identity." *Id.* The court found this disclosure to "bear sufficient resemblance to their common law counterparts." *Id.* Unlike *Tash*, Plaintiff does not allege facts which plausibly support the inference Defendant disseminated private "identifiable information" to third parties without her consent. So, *Tash* does not help Plaintiff.

United States District Court
Northern District of California

**CONCLUSION**

Because Plaintiff's complaint fails to allege sufficient facts to plausibly allege Article III standing, the Court GRANTS Defendant's motion to dismiss. However, the Court grants Plaintiff leave to amend to the extent she can plausibly allege Article III standing. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)). Plaintiff's amended complaint is due **August 17, 2026**. Plaintiff may not add additional parties or claims without leave of Court. If Plaintiff chooses not to amend her complaint, the action will be dismissed without prejudice to Plaintiff pursuing her claims in state court.

This Order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: July 20, 2026

JACQUELINE SCOTT CORLEY
United States District Judge